**C & G EXCAVATING, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 94–466C.**

United States Court of Federal Claims.

Oct. 24, 1994.

Stephen M. Martin, Philadelphia, PA, for plaintiff. Dante Mattioni, Mattioni, Mattioni & Mattioni, of counsel.

Gerald M. Alexander, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. David Fishman, Small Business Admin., and Robert Oswald, U.S. Army Corps of Engineers, of counsel.

## OPINION

MILLER, Judge.*

This bid-protest case comes before the court after argument on cross-motions for summary judgment. The overriding issue is whether the Small Business Administration (the "SBA") may deny a certificate of competency ("COC") for reasons other than those forming the basis of the contracting officer's nonresponsibility determination. Assuming that SBA review is not limited to the matters referred by the contracting officer, the issue becomes whether 48 C.F.R § 19.602–2(a)(2) (1993), requires the SBA to conduct a site visit to investigate a contractor's financial condition when that condition forms the basis of the SBA's COC denial, but was not identified by the contracting officer as a basis for

---

* Judge Miller was confirmed as Christine Cook Nettesheim.

the nonresponsibility determination. Plaintiff charges that the SBA acted arbitrarily and capriciously by failing to seek clarification or additional information concerning plaintiff's financial condition.

## FACTS

C & G Excavating, Inc. ("plaintiff"), a Delaware corporation with a principal place of business in Peach Bottom, Pennsylvania, engages in the business of land excavation and dredging. Plaintiff submitted a bid in response to solicitation DACW65–94–B–0009, a small business set aside issued by the United States Army Corps of Engineers (the "Corps") on January 24, 1994, for the dredging of the Rudee Inlet in Virginia Beach, Virginia.

On March 22, 1994, the Corps opened the sealed bids and identified plaintiff as the low bidder, with a price of $530,000.00. The only other bidder, Cottrell Engineering Corp., submitted a bid in the amount of $594,000.00, thereby exceeding plaintiff's bid by $64,-000.00. On March 25, 1994, Cottrell filed an agency protest, arguing that plaintiff did not meet the technical requirements specified in section 02881 of the solicitation. Specifically, Cottrell, citing the solicitation, alleged that plaintiff did not possess " 'a hydraulic pipeline dredge[ ] having a minimum 1,000 horsepower continuous to the pump,' " as required by section 02881 of the contract.

Corps employees John B. Roberts, Contract Specialist, Contracts Branch, and Joel F. Scussel, Operations Section, conducted a pre-award survey to ascertain whether plaintiff qualified as responsible within the meaning of 48 C.F.R. § 9.104–1 (1993), to receive and perform the contract at issue. Mr. Roberts sought information concerning plaintiff's financial capacity from various sources, including plaintiff's bank, Farmer's First Bank. The information received, as set forth in the April 26, 1994 pre-award survey, revealed that plaintiff had a checking balance "in the Moderate Four [4] figures," a certificate of deposit average "in the Mid Five [5] figures,"

and a loan average balance "in the Low Six [6] figures."

Messrs. Roberts and Scussel also contacted various individuals to obtain information on plaintiff's technical capability and overall competency as reflected by performance ratings on prior projects. According to the references contacted, plaintiff had received performance ratings ranging from "satisfactory" to "unsatisfactory." Mr. Roberts further requested that Carol C. Todd, plaintiff's President, explain in writing how plaintiff's dredge the "Amber II" satisfied the terms of section 02881. Finally, Mr. Roberts assigned individuals to visit plaintiff's facility and inspect the Amber II for capability and safety. Based on the information accumulated during the pre-award survey, Mr. Roberts concluded that the Corps should not award the contract to plaintiff because the Amber II failed to satisfy the requirements of section 02881.

On April 26, 1994, Contracting Officer Evelyn W. Rowland sent a letter to the SBA indicating that plaintiff was not responsible from a capacity standpoint to perform the contract because its dredge did not satisfy section 02881.[1] The letter informed the SBA that plaintiff had previously requested review under the certificate of competency ("COC") program. The letter also indicated that in accordance with FAR § 19.602–4(c), the contracting officer would award the contract to another responsible bidder unless the SBA issued a COC within 15 business days of receiving the referral letter. On April 28, 1994, Thomas W. McGrath, Chief of Procurement Assistance, SBA, sent a letter to the contracting officer notifying her that the SBA had received the referral and that it was proceeding to act on it. This acknowledgement activated the 15–day time clock that required the SBA to issue the COC decision by May 19, 1994. This deadline, however, was later extended to May 26, 1994.

Mr. McGrath also sent plaintiff a letter on April 28, 1994, informing it that the contracting officer had found plaintiff not responsible and that plaintiff could apply under the COC program for a review of this decision.[2] Mr.

---

1. Defendant does not dispute that the Corps found plaintiff to be financially responsible or

that the Corps' referral to the SBA was based solely on capacity.

2. In anticipation of plaintiff's COC application,

McGrath explained the general procedures for processing COC applications and outlined the specific information necessary for SBA review. The letter stated that the "SBA will perform a comprehensive, independent review of your capabilities both from a production and financial viewpoint, if necessary. A facility visit, additional information, and clarifications may be required to substantiate your case...."

In addition, not only did the letter stress that plaintiff bore the burden of establishing competence to fulfill the terms of the contract, but it also stated: "Assisting you in securing this contract is one of our primary goals, but we cannot do so if you fail to provide the necessary data...." The information required in the COC application included monthly cash flow reports, financial statements for the last three fiscal years, a profit and loss statement, cost analysis data, and other evidence indicating sufficient financing.

On May 5, 1994, plaintiff filed the COC application. Plaintiff submitted unaudited financial statements for the years 1990–1992, but provided no statement for 1993 because, according to the accompanying letter dated May 5, 1994, from plaintiff's attorney, one "was not prepared." Plaintiff also notified the SBA that it had secured both performance and payment bonds for the contract at issue, as required by the Miller Act.

As a supplement to the required COC application, Ms. Todd included a letter dated May 5, 1994, explaining that plaintiff was delinquent in the payment of federal taxes for the taxable years 1991 and 1992. Ms. Todd attributed this delinquency to the Government's failure to pay plaintiff, in full, the amount due on certain dredging contracts. Ms. Todd further informed the SBA that she had hired Equity Search, Inc., to assist her in resolving the tax delinquency with the Internal Revenue Service (the "IRS"). In explaining the status of the delinquency, Ms. Todd noted that "C & G and the IRS are in negotiations and ... [that the] matter will be resolved." Ms. Todd also requested that the SBA "not consider the tax deficiencies as a negative factor."

Plaintiff maintains that it believed the SBA would not consider the financial information it submitted with the COC application because the contracting officer had not raised its financial condition as a ground for the nonresponsibility determination. Plaintiff also contends that it informed the SBA that it was currently litigating three federal contracts, the successful resolution of which would provide plaintiff with approximately $1 million.

Upon receipt of plaintiff's COC application, the SBA Harrisburg office evaluated plaintiff's financial condition and completed the requisite financial report. The report recommended that the COC be denied, citing, among other factors, the absence of both the 1993 financial statement and a work-out agreement with the IRS concerning the tax delinquency.

On May 23, 1994, the COC Review Committee met to consider plaintiff's application and the Harrisburg office's financial evaluation documents. The committee unanimously recommended to the Assistant Regional Administrator for Procurement Assistance that the COC be denied. The committee determined that plaintiff possessed sufficient capacity, thereby reversing the contracting officer's determination concerning plaintiff's dredge. The committee's nonresponsibility determination, instead, was based on the firm's financial position, an issue not cited by the contracting officer in the referral. Specifically, the committee found that plaintiff 1) did not possess sufficient working capital; 2) had provided questionable balance sheet information; and 3) had not presented the SBA with any agreement with the IRS concerning the stipulated tax delinquency.

The Assistant Regional Administrator concurred with the committee's recommendation and notified plaintiff by letter dated May 26, 1994, that a COC would not be issued. The letter set forth each of the items listed by the committee as deficient. Although the SBA

Gedell Hawkins, SBA Procurement Assistant, sent a letter dated April 29, 1994, to the District Director in Harrisburg, Pennsylvania, alerting him to the potential application and specifying that "we will need the usual credit review...."

conducted a site visit to investigate plaintiff's capacity to perform, it did not perform a site visit concerning plaintiff's financial condition. Plaintiff contends that had such a site investigation been conducted, it would have revealed that it 1) "was ... [working] on a contract and ... expected [to receive] a substantial net profit" of $60,000.00, and 2) had "tacitly agreed" with the IRS for a payment schedule. Plf's Br. filed Sept. 20, 1994, at 14, 17. The IRS agreement dated July 8, 1994, to which plaintiff refers, however, specifies that the "[a]greement is contingent upon procuring the Rudee Inlet 1994 contract ... or a similar contract of equal or greater amounts." The agreement also reflects that plaintiff owed approximately $253,857.00 in back taxes.[3]

On July 20, 1994, plaintiff filed a complaint in the United States Court of Federal Claims seeking injunctive relief. The next day, unaware of plaintiff's suit for injunctive relief, the Corps awarded the contract to Cottrell, after having found the company responsible within the meaning of the regulations. Defendant moved for summary judgment, asserting that the SBA did not exceed the scope of its authority under the COC program by evaluating plaintiff's financial condition. Moreover, defendant argues that the SBA was not required to perform a site investigation in order to evaluate plaintiff's financial condition. Thereafter, plaintiff cross-moved.

## DISCUSSION

### 1. *Injunctive relief*

■ Plaintiff invokes the court's jurisdiction pursuant to 28 U.S.C. § 1491(a)(3) (1988), which authorizes the court to issue injunctive relief in cases of pre-award bid protests. The benchmark for the exercise of this jurisdiction is that "injunctive relief [is] awardable ... only in extremely limited circumstances." *CACI, Inc.–Fed. v. United States*, 719 F.2d 1567, 1581 (Fed.Cir.1983)

(quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed.Cir.1983)); *Isratex, Inc. v. United States*, 25 Cl.Ct. 223, 227 (1992).

■ The award of a permanent injunction is appropriate whenever a party can demonstrate by "a preponderance of evidence that the challenged action is irrational or unreasonable or violates an applicable procurement [statute or] regulation." *Logicon, Inc. v. United States*, 22 Cl.Ct. 776, 783 (1991) (citing cases). The court, however, should exercise its "[e]quitable powers ... in a way which best limits judicial interference in contract procurement...." *Grimberg*, 702 F.2d at 1372.

### 2. *Summary judgment*

■ Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Stissi v. Interstate and Ocean Transp. Co. of Philadelphia*, 765 F.2d 370, 374 (2d Cir.1985) (stating that "[w]hen a decision turns on the meaning of words in a statute or regulation, the decision is one of law which must be made by the court....") (citations omitted).

■ In resolving cross-motions, the court cannot weigh the evidence and determine the truth of the matter on summary judgment. *Anderson*, 477 U.S. at 249, 255, 106 S.Ct. at 2510, 2513. Any evidence presented by the opponent is to be believed and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2514. Uncontested material facts also have been found consistent with the rule that, in respect of any facts that may be considered as con-

---

**3.** During argument plaintiff indicated that it owed the IRS approximately $129,000.00. Penalties and interest payments comprise the difference between plaintiff's figure and the figure listed on the official IRS work-out agreement. Plaintiff disputes these penalty and interest pay-

ments, contending that the Government erred in not paying plaintiff the amount due on certain government contracts and that had the Government paid plaintiff, the deficiency would never have arisen.

tested, each party, in its capacity as the opponent of summary judgment, is entitled to "all applicable presumptions, inferences, and intendments." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir. 1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). Nonetheless, counsel's assertions regarding a fact at issue "cannot substitute for factual statements under oath." *Levi Strauss & Co. v. Genesco, Inc.,* 742 F.2d 1401, 1404 (Fed.Cir.1984); *see also Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984) (holding that a party opposing a motion for summary judgment must establish a conflict by a counter-affidavit or counter-statement of fact); *Levi Strauss,* 742 F.2d at 1404 (stating that mere assertions by counsel that a factual dispute exists are insufficient to avoid summary judgment); *Alde v. United States,* 28 Fed.Cl. 26, 33 (1993) (same).

### 3. *The SBA's authority under the COC program*

Section 8(b) of the Small Business Act, 15 U.S.C. § 637(b) (1988) (the "Act"), authorizes the SBA to provide various types of procurement assistance to small businesses. The specific procurement assistance program at issue in this case is the COC program, which allows the SBA "[t]o certify to Government procurement officers ... with respect to *all elements of responsibility,* including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern ... to receive and perform a specific Government contract...." 15 U.S.C. § 637(b)(7)(A) (emphasis added).

The COC program and the SBA's attendant involvement are implicated when the procuring agency's contracting officer determines that a small business contractor is not responsible to perform and receive a contract. FAR §§ 9.103(b), 19.602–1(a)(2) (1993). The Act specifies that once this determination is made, the agency may not preclude the contractor from receiving the contract award until the matter has been "referr[ed] ... for ... final disposition to the ... [SBA]." 15 U.S.C. § 637(b)(7)(A).

The procedures for referring matters to the SBA are contained primarily at section 19.602–1 of the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 19.602–1 (1993). The Department of Defense ("DOD"), General Accounting Office ("GAO"), and National Aeronautics and Space Administration ("NASA") issue and maintain the FAR system, FAR § 1.102(b), which was established to ensure "uniform policies and procedures for acquisition by all executive agencies." FAR § 1.101. The SBA regulations contained at 13 C.F.R. § 125.5 (1994), promulgated pursuant to the authority conferred by 15 U.S.C. § 637(b)(7), however, also include a provision briefly explaining the issue of referral. In addition, the SBA regulations include an explanation of the purpose of the COC program, as well as a description of pertinent SBA procedures.

The referral issue is only one example of reiteration in the FAR and SBA regulations. The FAR, in fact, replicate many provisions of SBA regulations. *See* FAR §§ 19.601–19.602–4 (1993). For example, both the FAR and SBA regulations specify that once the SBA receives a referral from the contracting officer detailing the basis for the nonresponsibility decision, the SBA is allowed 15 days from the receipt of the referral to make a COC determination. FAR § 19.602–2(a); 13 C.F.R. § 125.5(d). In addition, both sets of regulations stipulate that after receiving the referral, the SBA must contact the prospective contractor to inform it of the negative responsibility determination and apprise it of the opportunity to apply for a COC. FAR § 19.602–2(a)(1); 13 C.F.R. § 125.5(e).

■ The primary issue in this case concerns the SBA's authority to deny a COC for reasons other than those forming the basis of the contracting officer's nonresponsibility decision. Defendant relies on the statute, SBA regulations, FAR, and various judicial and Comptroller General decisions to support the proposition that the SBA may evaluate all elements of responsibility in conducting a COC review, not simply those factors specified by the contracting officer as deficient in the referral letter. Plaintiff argues that the SBA lacked any authority to consider factors of responsibility not cited by the contracting

officer. Thus, according to plaintiff, the SBA should have limited its review in this case to the issue of capacity and not commented on plaintiff's financial capability.[4]

Plaintiff argues that the regulations contained at 13 C.F.R. § 125.5 apply only to cases wherein "the procuring agency desires to issue the contract to a sole source pursuant to 15 U.S.C. § 637(a)(16) [sic]." Plf's Br. filed Sept. 20, 1994, at 10 (citation omitted). Relying on *DAE Corp. v. Engeleiter*, 958 F.2d 436 (D.C.Cir.1992), plaintiff misconstrues and mischaracterizes the court's holding.

The court in *DAE* defined the relationship between sections 8(a) and 8(b) of the Act, both of which contain programs for small business participation in the federal procurement process. Under the section 8(a) program, the SBA contracts with federal procuring agencies for a good or service and then subcontracts that work to a small business concern "owned by a socially or economically disadvantaged person." *Id.* at 437. When a procuring agency recommends a small business to the SBA, the SBA will award the subcontract if the SBA determines that the disadvantaged business qualifies as responsible. 15 U.S.C. § 637(a)(16)(A) (governing sole-source contracts). The regulations implementing the section 8(a) program are contained at 13 C.F.R. §§ 124.308, 124.313 (1994), and clarify that even if the procuring agency recommends a disadvantaged small business concern to the SBA for a possible subcontract, the procuring agency does not become involved in the responsibility determination. 13 C.F.R. §§ 124.308(e)(1)(ii), 124.313.

In discussing section 8(b) of the Act, the *DAE* court focused on the COC program, 15 U.S.C. § 637(b)(7), and the implementing regulations codified at 13 C.F.R. § 125.5. The court explained that in contracts governed by section 8(b), as opposed to 8(a), the contracting officer of the procuring agency determines the responsibility of the prospective contractor. The court further noted that the COC program enables small business concerns, after there bids are rejected by the contracting officer, to apply to the SBA for a COC; such an application disables the procuring agency from awarding the contract to another bidder for a specified period.

In defining the distinct, but related, programs contained in sections 8(a) and 8(b), the court in *DAE* held "that SBA responsibility determinations for disadvantaged small businesses seeking contracts under the § 8(a) program are covered exclusively by 15 U.S.C. § 637(a)(16) [and the regulations contained at 13 C.F.R. §§ 124.308, 124.313] and do not involve the procedures required by § 637(b)(7)" or the attendant regulations at 13 C.F.R. § 125.5. *DAE*, 958 F.2d at 437. Thus, the holding did not limit the applicability of the SBA regulations set forth in 13 C.F.R. § 125.5; rather, it clarified the scope and relevance of the section 124 regulations. Because this case does not involve a sole-source procurement under section 8(a), both the regulations contained at 13 C.F.R. §§ 124.308, 124.313 and the *DAE* decision are inapposite. The regulations controlling the disposition of this case are found at 13 C.F.R. § 125.5.

Plaintiff also maintains that the SBA regulations are inapplicable because the contracting officer's referral letter to the SBA dated April 26, 1994, indicated that referral was made pursuant to FAR § 19.602–1(2),[5] not the SBA regulations. Plaintiff's argument,

---

**4.** At argument plaintiff asserted that the Corps should never have evaluated plaintiff's case. According to plaintiff, the Corps wrongfully included requirements in the procurement knowing that plaintiff could not comply with them and that these provisions were not necessary to the successful completion of the project. Plaintiff further contended that such bad faith actions by the Corps resulted in the contracting officer's finding of nonresponsibility and referral to the SBA. Because plaintiff did not raise this argument in either its response to defendant's summary judgment motion or in its cross-motion,

plaintiff is deemed to have abandoned it. *Sheets v. United States*, 2 Cl.Ct. 101, 102 n. 2 (1983); *see also Webco Lumber, Inc. v. United States*, 230 Ct.Cl. 457, 465, 677 F.2d 860, 864 (1982); *Ulman v. United States*, 214 Ct.Cl. 308, 314, 558 F.2d 1, 4 (1977); *Nossen v. United States*, 189 Ct.Cl. 1, 18, 416 F.2d 1362, 1372 (1969), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

**5.** This citation does not exist. It appears that the contracting officer intended to cite FAR § 19.602–1(a)(2).

in essence, is that if the SBA regulations applied, the contracting officer would have cited the analogous referral provision in 13 C.F.R. § 125.5(d).

Although the SBA regulations include a similar referral provision, the SBA's own regulations, not the FAR, govern SBA actions with respect to the COC program. The referral information is included in the SBA regulations as background information to lay the framework for the COC program; the SBA's regulations primarily describe the SBA's role once a case is referred by a contracting officer. The FAR, in contrast, published by GAO, DOD, and NASA, detail the acquisition procedures for government agencies. One aspect of these acquisition procedures includes the requirement that the contracting officer, after making a finding of nonresponsibility with regard to a small business concern, refer the case to the SBA for final disposition. In this case the contracting officer followed these regulations and referred the issue to the SBA as soon as she had made the nonresponsibility determination. Plaintiff appears to misunderstand the relevance and role of the regulations contained at 13 C.F.R. § 125.5, which were promulgated by the SBA pursuant to section 8(b) of the Act, 15 U.S.C. § 637(b)(7).

Because plaintiff cites no authority other than the contracting officer's referral letter for the proposition that only the FAR apply to the COC process, the SBA regulations cannot be ignored. Both sets of regulations shall be considered in resolving what constitutes the scope of SBA review authority.

Plaintiff's sole authority in support of its contention that the SBA's review is restricted to those issues cited in the contracting officer's referral is FAR § 19.602–2(a)(2). This provision stipulates that the SBA will "send a[ ] ... team to visit the concern to investigate it only for the specific elements of responsibility that the agency notice specified as lacking...." The SBA complied with this provision and performed a site visit to investigate only plaintiff's capacity, the element listed as lacking by the contracting officer. In denying the COC, the SBA, however, based its decision on plaintiff's financial condition, not on capacity. According to plaintiff, Congress could not have contemplated a scheme whereby the SBA could deny a COC without sufficiently investigating the small business concern, especially in cases wherein the contracting officer originally had determined plaintiff's financial condition to be satisfactory. Thus, plaintiff maintains that FAR § 19.602–2(a)(2) would not be necessary if the SBA possessed authority to perform an independent evaluation to investigate all aspects of responsibility.[6] Defendant counters that FAR § 19.602–2(a)(2) addresses only procedures regarding the performance of site investigations and does not deal with the scope of the SBA's review authority.

The parties have uncovered an inconsistency within the FAR. Because the issue regarding the scope of the SBA's review authority is an issue of first impression, this inconsistency has not been resolved. Section 19.601(a) provides:

A Certificate of Competency is the certificate issued by the Small Business Administration (SBA) stating that the holder is responsible (with respect to *all elements of responsibility*, including but not limited

---

6. To support its position, plaintiff further relies upon two letters from the SBA. The SBA letter dated April 28, 1994, states that financial review shall be conducted only "if necessary." Plaintiff argues that another SBA letter, also dated April 28, to the contracting officer implies that the SBA will review only the issue cited by the contracting officer. The letter states that the "SBA is proceeding ... on the basis that ... the contracting officer has determined that the prospective contractor is *responsible in all other areas* of capacity and credit except as to the element referred.... No other area of responsibility ... will be considered after the COC determination is made...." (Emphasis in original.)

The SBA letter to plaintiff specifically stated that the SBA may *consider financial information*, an issue not cited as deficient by the contracting officer. The SBA letter to the contracting officer containing details relevant to the referral process did not state that the SBA would confine its review to the contracting officer's decision. The letter clarified the basis supporting the referral and informed the contracting officer that the SBA was proceeding with its review in light of the adverse determination. In addition, the letter stated that no other element of responsibility shall be considered after the SBA makes its COC determination. The letter, however, included no such limitation as to the SBA's actions before the COC determination was made.

to capability, competency,. capacity, credit, integrity, perseverance, and tenacity) for the purpose of receiving and performing a specific Government contract.

(Emphasis added.) The literal language of the regulation implies that in issuing the COC, the SBA may evaluate all elements of responsibility. The general factors to be evaluated in determining whether a prospective contractor qualifies as responsible are set forth at FAR § 9.104–1. *Reel–O–Matic Sys., Inc. v. United States,* 16 Cl.Ct. 93, 99 (1989) (citing FAR § 9.104–1 in evaluating SBA's finding of responsibility). These factors include an evaluation of the prospective contractor's financial resources, performance record, and production facilities. *See also* 15 U.S.C. § 637(b)(7)(A) (defining responsibility as including capacity, credit, capability). Thus, FAR § 19.601(a) supports defendant's position, because it appears to authorize the SBA to evaluate all factors underlying a responsibility determination, including both credit and capacity.

FAR § 19.602–2(a)(2), which, again, requires the SBA to conduct a field investigation only for those elements of responsibility cited as lacking by the contracting officer, conflicts with FAR § 19.601(a). Section 19.602–2(a)(2), according to plaintiff, calls into question the legitimacy of the SBA's reviewing elements of responsibility not cited by the contracting officer. In addition to this conflict within the FAR, FAR § 19.602–2(a)(2) is inconsistent with the SBA regulations, 13 C.F.R. § 125.5, generally and with 13 C.F.R. § 125.5(e), specifically. Although one would expect the FAR to be consistent both internally and in conjunction with SBA regulations, unfortunately, they are not.

In general, the SBA regulations conflict with FAR § 19.602–2(a)(2) because they do not contain any restrictions as to the meaning of the term "responsibility." For example, the SBA regulations define a COC as a "written instrument ... certifying that a small concern ... possesses a responsibility." 13 C.F.R. § 125.5. Section 125.5(d) further provides that once the contracting officer notifies the SBA as to the basis of the referral, the SBA must "investigate and certify as to the bidder's responsibility." Finally, section 125.5(j) provides that "the COC is conclusive as to responsibility...." In contrast, FAR § 19.602–2(a)(2), restricts the definition of responsibility by limiting the scope of site investigations to the elements cited by the contracting officer as deficient. According to plaintiff's theory, this restriction translates into a restriction on the SBA's overall review authority. In addition to this general conflict, a direct conflict exists between FAR § 19.602–2(a)(2) and 13 C.F.R. § 125.5(e), in that the former limits the scope of the site investigation to the elements cited by the contracting officer as lacking, and the latter contains no such restriction. 13 C.F.R. § 125.5(e) (stating "SBA personnel may be sent to the firm to review the responsibility of the applicant....").

Although plaintiff contends that the FAR restriction controls the extent of the SBA's review authority, plaintiff fails to recognize that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.... [especially when the] 'decision as to the meaning or reach of a statute has involved reconciling conflicting policies....' " *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted) (quoting *United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961) (citations omitted)). Because Congress entrusted the SBA with administering the COC program as provided in section 8(b) of the Act, 15 U.S.C. § 637(b)(7), the court must accord the SBA's interpretation of the program appropriate deference. The FAR, promulgated by DOD, GAO, and NASA, are designed to provide uniform acquisition procedures for federal government agencies. Once the contracting officer refers a matter to the SBA, as required by the FAR, the SBA's procedures generally should control, especially considering that the SBA is the agency charged with issuing COCs, not DOD, GAO, or NASA.

Plaintiff does not acknowledge that the SBA regulations comport with the language of section 8(b), 15 U.S.C. § 637(b)(7). The Act specifically provides that the SBA may "certify to Government procurement officers

... with respect to *all elements of responsibility,* including, but not limited to ... capacity, credit." [7] 15 U.S.C. § 637(b)(7)(A) (emphasis added); *see also* FAR § 9.104–1 (defining elements of responsibility determination to include capacity and credit); FAR § 19.601(a) (defining SBA review to include all elements of responsibility). Similar to the statutory language, the SBA regulations speak generally in terms of "investigat[ing] ... the bidder's responsibility" and "review[ing] the responsibility of the applicant" and do not restrict the elements underlying the SBA's responsibility determination. 13 C.F.R. §§ 125.5(d), (e). The court therefore rules that the SBA regulations reflect a position more consistent with congressional intent.

The court interprets the Act and regulations to mean that SBA review in a COC proceeding is not limited to the deficiencies cited by the contracting officer; the SBA may consider all factors related to making a responsibility determination.[8] *See* 15 U.S.C. § 637(b)(7)(A) (authorizing SBA "[t]o certify ... with respect to all elements of responsibility"); *DAE,* 958 F.2d at 438 (stating SBA decides "whether the contractor meets the responsibility criteria"); *Action Service Corp. v. Garrett,* 790 F.Supp. 1188, 1194 (D.P.R.1992) (stating "SBA is authorized to make determinations binding on the Navy with respect to all elements of responsibility.... listed in 48 C.F.R. § 9.104," which includes credit and capacity) (footnote and citation omitted); FAR § 9.104–1 (defining factors of responsibility to include credit and capacity); FAR § 19.602–4(b) (stating "SBA COC's are conclusive with respect to all elements of responsibility...."); *cf.* 13 C.F.R. § 125.5(f) (noting only in cases where COC is

granted must SBA issue letter addressing elements of responsibility specified in contracting officer's referral). In determining whether the SBA's construction of the statute is reasonable, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted ... or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11 (citations omitted).

With regard to the direct conflict between 13 C.F.R § 125.5(e) and FAR § 19.602–2(a)(2), the court finds that the restrictive language in the FAR concerning the scope of SBA's site investigation cannot be interpreted to limit the scope of SBA's general review authority. The clear intendment of 13 C.F.R. § 125.5(e) is that the SBA may perform a site investigation examining all elements of responsibility. This interpretation is consistent with the statute and shall be given deference. The court also resolves the seeming internal inconsistency between FAR §§ 19.601(a) and 19.602–2(a)(2) in terms of the scope of the SBA's review by interpreting those regulations consistent with the SBA regulations, *i.e.,* the SBA may consider all aspects of responsibility in making a COC determination. The SBA therefore properly considered plaintiff's financial status, even though the contracting officer cited capacity as the only basis for her nonresponsibility decision.

■ This interpretation is supported further by the fact that Congress authorized the SBA to be the final arbiter on responsibility

---

7. The House Conference Report addressing the COC program clarifies that "[t]he House Bill authorizes the SBA to make all determinations regarding the responsibility of a small business concern to perform a specific Government contract. The term 'responsibility' ... include[s] *all criteria* presently used by procurement officers...." H.R.Conf.Rep. No. 535, 95th Cong., 1st Sess. 21 (1977), *reprinted in* 1977 U.S.C.C.A.N. 821, 843, 851 (emphasis added). FAR § 9.104–1 sets forth the criteria to be employed by procurement officers in making a COC determination and includes both capacity and financial resources.

8. *This position is also consistent with the SBA's interpretation of its own regulations. For example, Robert B. Silikovitz, the SBA's Assistant Regional Administrator for Finance and Investment and financial member of the COC review committee, stated in his deposition that "[w]e always make an independent [financial] analysis regardless of what the agency ... d[id]."* Deposition of Robert B. Silikovitz, Sept. 7, 1994, at 49. Where the construction of a regulation is at issue, deference to the interpreting agency "is even more clearly in order." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

determinations.[9] *See* 15 U.S.C. § 637(b)(7)(A) (stating contract cannot be awarded until "final disposition" by SBA); 15 U.S.C. § 637(b)(7)(C) (noting contracting officer must accept COC as conclusive); 13 C.F.R. § 125.5(j) (noting SBA determination "is conclusive as to responsibility" and serves as final and binding decision on procuring agency); FAR § 19.602–4(b) (same). In light of this authority, the SBA would be remiss if it did not evaluate all factors comprising the responsibility determination. In addition, several decisions of the Comptroller General support the position that the SBA has authority to review all factors in determining responsibility.[10] *See Astrodyne, Inc.,* 88–2 CPD ¶ 24 (ruling FAR § 19.602–2(a)(2) does not limit scope of SBA review under COC program to issues underlying contracting officer's nonresponsibility determination); *F.W. Morse & Co.,* 87–2 CPD ¶ 396 (stating SBA review under COC program is not limited to deficiencies cited by contracting officer and SBA may perform independent responsibility determination); *Carolina Parachute Corp.,* 87–2 CPD ¶ 26 (same); *Skillens Enter.,* 81–2 CPD ¶ 472 (same).[11]

The SBA did not exceed its authority by considering plaintiff's financial condition, an issue relevant to the responsibility determination but not cited specifically by the contracting officer.

### 4. *The SBA's responsibility determination*

▉ Plaintiff argues that, even assuming that the SBA had jurisdiction to evaluate its financial condition, the SBA erred in performing its investigation. Plaintiff first contends that the SBA violated FAR § 19.602–2(a)(2) by not conducting the required site visit to examine plaintiff's financial capacity. Alternatively, even if a site visit was not required, the SBA did not conduct a compe-

tent investigation because it failed to obtain additional information or seek clarification from plaintiff concerning its financial status. Plaintiff asserts that had either of these actions been taken, the SBA would have obtained "vital facts" which would have reflected plaintiff's responsibility to receive and perform the contract at issue. Plf's Br. filed Oct. 4, 1994, at 7. In plaintiff's view these omissions warrant a finding that the SBA acted arbitrarily and capriciously and that the decision to deny the COC lacked a rational basis.

### 1) *Site investigations pursuant to FAR § 19.602–2(a)(2)*

FAR § 19.602–2(a)(2) provides that the SBA "send a[ ] . . . team to visit the concern to investigate it only for the specific elements of responsibility that the agency notice specified as lacking. . . ." In support of its position that the SBA erred in not performing the required site visit, plaintiff relies heavily on this regulation and this court's decision in *Reel–O–Matic.*

The plain language of FAR § 19.602–2(a)(2) requires only that the SBA conduct a site visit to investigate those elements of responsibility identified as lacking by the contracting officer, which in this case was plaintiff's capacity. In light of the parties' admissions at argument that the SBA performed a site visit to examine plaintiff's capacity, the SBA complied with the literal terms of FAR § 19.602–2(a)(2).

*Reel–O–Matic* also does not support plaintiff's proposition. Plaintiff's capacity in that case constituted one of the grounds cited by the contracting officer as deficient. This court held that, in light of the capacity referral, the SBA violated FAR § 19.602–2(a)(2) by not performing a site visit to investigate both of plaintiff's production facilities. The

---

9. Although the Act commits the final disposition of COC review to the SBA, this does not preclude judicial review of a decision not to grant a COC. *Cavalier Clothes, Inc. v. United States,* 810 F.2d 1108, 1111 (Fed.Cir.1987).

10. Decisions of the GAO, although not binding, are to be accorded deference. *Honeywell, Inc. v. United States,* 870 F.2d 644, 647 (Fed.Cir.1989); *Logicon,* 22 Cl.Ct. at 786.

11. As additional support for the SBA's broad authority, defendant relies on *Tele–Sentry Sec., Inc. v. United States Dep't. of Defense (Air Force),* 705 F.Supp. 629 (D.D.C.), *aff'd in part, vacated in part,* 889 F.2d 1101 (Fed.Cir.1989). Because the portion of the decision on which defendant relies was vacated as to the merits, the court does not consider it.

SBA erroneously visited only one facility, when an inspection of both facilities was necessary in order to assess plaintiff's capacity accurately. Thus, the violation in *Reel–O–Matic* arose because of the failure of the SBA to comply with the literal terms of FAR § 19.602–2(a)(2).[12] In contrast, the contracting officer in this case did not cite plaintiff's financial condition as a basis for its nonresponsibility determination. Accordingly, under the terms of *Reel–O–Matic* and FAR § 19.602–2(a)(2), the SBA has not committed error. These two authorities simply do not address the situation in dispute between the parties—whether the FAR require the SBA to conduct a site visit to investigate an issue not noted as deficient in the contracting officer's referral.

In effect, plaintiff appears to request an extension of the FAR to require the SBA to investigate all elements of responsibility and, in particular, those elements upon which the SBA intends to base its COC denial. The apparent conflict originally identified in *Reel–O–Matic*, between FAR § 19.602–2(a)(2) and the SBA regulations, 13 C.F.R. § 125.5(e), bears upon plaintiff's request. Section 125.5(e) provides that "[u]pon timely receipt of required documentation, SBA personnel *may* be sent to the firm to review the responsibility of the applicant...." (Emphasis added.) This provision conflicts with FAR § 19.602–2(a)(2), which requires that a team be sent to investigate only those issues cited by the contracting officer. As noted previously, the court interprets the reference to "responsibility of the applicant" in 13 C.F.R. § 125.5(e) to mean that the SBA may investigate all elements of responsibility, not simply those highlighted by the contracting officer.

A conflict, however, still remains between these two regulatory provisions. Specifically, the SBA regulations appear to make the site visit discretionary for all aspects of responsibility, whereas the FAR make the visit obligatory for elements referred by the contracting officer. The requirement of a site visit to a small business concern's facility does not appear in the language of the statute authorizing the COC program. *See* 15 U.S.C. § 637(b)(7). Rather, it appears only in the regulations. While the parties did not specifically raise this regulatory conflict, and the discrepancy was unnecessary to decide in *Reel–O–Matic*, the Government has been on notice since 1989, when *Reel–O–Matic* was decided, that the conflict exists and poses problems. The Government's regulatory machinery has perpetuated a conflict that should have been resolved to avert future litigation.

The court can only interpret the regulations as written. The conflict must be resolved in favor of the SBA's interpretation, given its statutory grant of authority to make final competency decisions. *See Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83 (holding court must pay special deference to agency's interpretation of statute which it is entrusted to administer); *see also* 15 U.S.C. § 637(b)(7)(A) (stating matter must be referred to SBA for "final disposition"). Although acknowledging this authority, the FAR make obligatory what the SBA regulations reserve to the agency's discretion. To that extent, the court holds that the SBA may determine in its discretion whether to order on-site investigations of any element of responsibility that is not the subject of a referral. The larger question of whether the SBA is required to perform a site visit for issues referred by the contracting officer should be resolved by the Government's cadre of regulation-drafters well in advance of the next lawsuit. In the circumstances of the case at bar, however, the SBA was under no obligation to perform a site visit to evaluate plaintiff's financial condition, given that the subject of the referral was another aspect of contractor responsibility.[13]

The court's ruling is further supported by the agency's interpretation of the site visit requirement as set forth by Dean Koppel,

---

**12.** Despite the violation the court found that the error was not prejudicial and denied the protest.

**13.** It should be noted that the regulatory inconsistency in this case did not mislead plaintiff about its responsibilities; instead, plaintiff would like to take advantage of a provision that the court rules neither acts to confer rights on plaintiff nor requires the SBA to take any action to benefit plaintiff.

the SBA's COC Program Manager, Washington, DC, and Robert B. Silikovitz, the SBA's Assistant Regional Administrator for Finance and Investment and financial member of the COC review committee. Mr. Koppel, in his declaration, stated that the

> SBA does not interpret 48 CFR § 19.602–2(a)(2) to require SBA to conduct a site visit to investigate any aspects of responsibility other than those which the procuring agency specifically stated formed the basis of its nonresponsibility determination. Rather, 13 C.F.R. § 125.5(e) clearly indicates that SBA *may* conduct a site visit to investigate any aspects of responsibility not specifically referred to SBA by the procuring agency.

Declaration of Dean Koppel, Sept. 21, 1994, ¶ 4 (emphasis in original). Mr. Silikovitz, in his deposition, echoed Mr. Koppel, noting that a site visit was not required where the referral did not specify financial condition. Deposition of Robert B. Silikovitz, Sept. 7, 1994, at 32–33. "In situations in which 'the meaning of [regulatory] language is not free from doubt,' the reviewing court should give effect to the agency's interpretation so long as it is 'reasonable,' *Ehlert v. United States,* 402 U.S. 99, 105 [91 S.Ct. 1319, 1323, 28 L.Ed.2d 625] (1971)...." *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991). The SBA was not required to conduct a site visit to investigate plaintiff's financial condition.

2) *Requiring additional information and clarification*

■ Plaintiff maintains that even if a site visit was not required, the SBA did not conduct a competent investigation because it failed to obtain additional information or seek clarification from plaintiff concerning its financial status. Plaintiff characterizes this omission as arbitrary and capricious.

In cases where an arbitrary and capricious action is charged, "the standard of proof to be applied ... should be a high one...." *Keco Indus., Inc. v. United States,* 192 Ct.Cl. 773, 784, 428 F.2d 1233, 1240 (1970); *see Skytech Aero, Inc. v. United States,* 26 Cl.Ct. 251, 254 (1992) (holding "scope of review

under the 'arbitrary and capricious' standard is narrow...."). Plaintiff accordingly bears a weighty burden in establishing its position. "A necessary corollary to ... [this] burden is consideration of the discretion accorded to procurement officials." *Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147, 1153 (Fed.Cir.1994) (citing *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971)). As the United States Court of Appeals for the District of Columbia Circuit noted:

> If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations. Otherwise the courts would become the forum for all manner of objections to procurement decisions ... and would be propelled without adequate preparation into a tangle of complex statutory and decisional rules....

*Steinthal,* 455 F.2d at 1301–02 (footnote omitted). Although these principles derive from cases evaluating the actions of contracting officers, they similarly apply when evaluating the SBA's responsibility evaluation. These principles are relevant because, in effect, the SBA, in the discharge of its duties relating to the COC program, may perform an identical responsibility analysis as the contracting officer.

The record indicates that the SBA denied the COC because of a finding that plaintiff lacked sufficient financial resources. In support of this determination, in the May 26, 1994 letter to plaintiff, the SBA explained that plaintiff 1) had no existing work-out agreement with the I.R.S.; 2) had provided questionable balance sheet information; and 3) did not possess sufficient working capital. Plaintiff argues that "the SBA ignored several vital facts ..." concerning plaintiff's financial position because it failed to both clarify issues that arose during the evaluation of its COC application and to obtain additional information. Plf's Br. filed Oct. 4, 1994, at 7. According to plaintiff, had the SBA sought such information, the result would have been

a determination that plaintiff was financially capable.

Plaintiff further contends that because the contracting officer's referral cited only capacity, it had no idea as to the importance of the financial information that it submitted with its COC application. Plaintiff bases its ignorance on the following statement in the SBA's April 28, 1994 letter to plaintiff: "[The] SBA will perform a comprehensive, independent review of your capabilities both from a production and financial viewpoint, if necessary...." The letter also states that "[a] facility visit, additional information, and clarifications *may be required* to substantiate your case...." (Emphasis added.) Plaintiff contends that these excerpts led it to believe that it could await a request for additional information or clarification.

 In evaluating whether the SBA's decision to deny the COC lacked a rational basis, it must be emphasized that the burden rests with the prospective contractor to demonstrate that it satisfies the criteria underlying a responsibility determination. FAR § 9.103(c); *see* FAR § 9.103(b) (stating that when contracting officer does not have "information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility...."). The SBA's April 28, 1994 letter informed plaintiff of its burden. The letter specifically stated that plaintiff must submit the information on the "List of Data Required;" that it was "imperative" to file this information; and that without the necessary data the SBA could not assist plaintiff in securing the contract. Moreover, plaintiff understood the import of the financial materials required by the COC application. Included with its application was a letter from Ms. Todd to the SBA explaining a tax delinquency and requesting that the SBA "not consider the ... deficiencies as a negative factor."

The submission of a complete COC application is of particular import considering the

15–day decisionmaking interval for COC determinations allotted the SBA by both the FAR and its own regulations. FAR § 19.602–2(a); 13 C.F.R. § 125.5(d). The SBA has 15 business days from the date of receiving the contracting officer's referral letter within which to issue a COC decision. The SBA received the referral on April 28, 1994, and requested the COC application from plaintiff by May 6, 1994, which allowed the SBA until May 19, 1994, to issue a decision. The 15–day interval was extended to May 26.[14] Plaintiff's challenge to the SBA action must be considered in view of both plaintiff's burden and the 15–day turn-around requirement.

The first issue to address in evaluating the SBA's decision is plaintiff's tax deficiency for the taxable years 1991 and 1992. The SBA's letter of May 26, 1994 deemed this issue to be "most important" to its overall finding resulting in the COC denial. In a letter dated May 5, 1994, Ms. Todd informed the SBA of the deficiency and provided it with the name and telephone number of the consulting firm which plaintiff had hired to facilitate IRS negotiations. In the letter, Ms. Todd stated that "C & G and the IRS are in negotiations and this matter will be resolved." Ms. Todd also explained that there would be no tax deficiency had plaintiff been paid on time by the Government on certain contracts. She also noted that suits were currently pending against the United States concerning the disputed contracts. Finally, Ms. Todd requested that the SBA "not consider the tax deficiencies as a negative factor in making ... [the COC] decision" and that she was available if further information was necessary.

Plaintiff asserts that if the SBA had sought additional information, it would have learned "that ... [plaintiff] and the I.R.S. had tacitly agreed to a pay out schedule." Plf's Br. filed Sept. 20, 1994, at 14. Such a finding, however, would not have substantially altered the SBA's analysis of the situation. The COC

---

14. The FAR specifies that the procuring agency and the SBA may agree to extend the 15–day period. FAR § 19.602–2(a). The SBA regulations, however, do not include such a discretionary provision. 13 C.F.R. § 125.5(d). Instead, 13 C.F.R. § 125.5(d) states that contract award will be "withheld ... for a period up to 15 working days following the date of receipt by SBA" of the contracting officer's referral.

committee recommended denial of the COC on May 23, 1994, and the decisionmaker concurred with this decision, issuing an adverse determination letter dated May 26, 1994. The record illustrates that although the SBA and procuring agency extended the COC deadline to May 26, 1994, the IRS agreement of record was not reached until July 8, 1994, almost one and one-half months after the SBA issued its decision. *See* 13 C.F.R. § 125.5(g) (stating once COC is denied, SBA may arrange to meet with contractor, but case will not be reopened once certificate is denied). As of May 26, 1994, the record reflects that plaintiff remained delinquent in its taxes for 1991–1992, and that the SBA knew only that plaintiff was "negotiating" and working with the IRS to resolve the situation.

Relying on the deposition of Mr. Silikovitz, plaintiff appears to argue that the SBA had a duty to inquire further as to the status of the negotiations between plaintiff and the IRS. Although Mr. Silikovitz did not indicate that the SBA bore the burden to pursue the matter, he postulated that there may be circumstances wherein the SBA would contact the IRS concerning an agreement with a prospective contractor. Such an event may occur, according to Mr. Silikovitz, when "the applicant says 'Well, we have an agreement. We are this close....'" Silikovitz Dep. at 72. Mr. Silikovitz further emphasized that "[w]hen there is some evidence that ... [the parties] are close to ... [an agreement]," the SBA in its discretion "may" contact the IRS; it, however, is not required to do so. *Id.* According to Mr. Silikovitz, the prospective contractor provides the evidence concerning such agreements.[15] Negotiating and reaching a mutual agreement are two distinct concepts. Even after the SBA and procuring agency extended the COC deadline in plaintiff's favor by seven days, plaintiff, with the assistance of counsel, still failed to provide

the SBA with current information as to the negotiations with the IRS. In essence, the SBA had no idea as to when the issue would be resolved; it only knew with certainty that the parties were negotiating. The court therefore finds that plaintiff did not satisfy its burden of establishing responsibility, especially considering the tight internal timetable under which the SBA was working.

The nature of the July 8, 1994, work-out agreement further supports the SBA's decision. The agreement reflects both a deficiency of approximately $253,857.00,[16] and its contingency upon plaintiff's acquiring the Rudee Inlet project or a similar contract of equal or greater value. The deficiency was substantial given the size of the company, *i.e.*, $326,695.00 in 1992, and the size of the contract, *i.e.*, $525,000.00. The amount of the deficiency and the contingency noted in the agreement would have impacted the SBA's analysis, so it is mere conjecture that a request for more information on the status of negotiations between the parties would have given the SBA information likely to have changed the result. Thus, the SBA appears to have acted rationally in declaring that the tax deficiency constituted the "most important" basis for the COC denial.

The SBA also cited questionable balance sheet information as a basis for the COC denial. In a letter dated April 28, 1994, the SBA informed plaintiff that "in order to establish your competency, it is imperative that the remaining information on the *List of Data Required* be filed.... [W]e cannot ... [assist you in securing this contract] if you fail to provide the necessary data...." The List of Data Required provided that "[f]inancial statements ... for the last three fiscal years are to be submitted ...," which, in plaintiff's case meant the financial statements for 1991–1993. Def's Br. filed Aug. 11, 1994,

---

15. Mr. Silikovitz noted that the SBA "require[d] *formal evidence* that there was a work-out agreement" with the IRS. Silikovitz Dep. at 71 (emphasis added); *see also id.* at 41.

16. Plaintiff argues that it owed the IRS approximately $129,000.00. According to plaintiff, the difference between the amount in the agreement and the $129,000.00 is attributable to penalties and interest, amounts for which plaintiff con-

tends it cannot be held liable, given that the Government wrongfully withheld payment on certain contracts causing the tax deficiency. Although plaintiff has filed lawsuits against the Government, the courts have not rendered decisions as to the propriety of the actions. This court therefore cannot speculate as to the appropriateness of the IRS' penalties and interest.

App. at 59. In filing the COC application, plaintiff's attorney, in a letter dated May 5, 1994 letter, stated that the "1993 Financial Statement was not prepared." Although plaintiff submitted financial information as to the first period of 1994, this cannot substitute for the 1993 fiscal year report. The absence of required financial data constitutes a sufficient ground for denying a COC. *Reel–O–Matic*, 16 Cl.Ct. at 101.

▇▇ In addition to this omission, plaintiff also submitted unaudited financial statements developed from representations by plaintiff's management. Plaintiff's accountant also declined to express an opinion as to the financial statements as a whole. Plaintiff asserts that the SBA could have contacted its accountant if there were questions about the balance sheets. Again, plaintiff and its attorney, who assisted in the submission of the COC application, seem to ignore two critical facts. First, plaintiff bears the burden of establishing responsibility. FAR § 9.103(c). Second, the SBA must issue a COC decision within 15 days of receiving the contracting officer's referral. 13 C.F.R. § 125.5(d); FAR § 19.602–2(a). Plaintiff's burden includes providing the most accurate, current, and complete information. This information is particularly important, given that the SBA is allowed only 15 days to make a final, binding, and conclusive COC determination as to a prospective contractor's responsibility. The SBA cannot be required to request additional information when the applicant simply did not put forth the requisite effort to complete satisfactorily the COC application.

Plaintiff's working capital constituted the final ground upon which the SBA denied the COC. Plaintiff argues that the SBA ignored or misconstrued vital information concerning plaintiff's working capital. In ruling on plaintiff's contentions, the court emphasizes

that it must examine the SBA's decision based on the information plaintiff presented in its COC application, not on the information provided to the court. In addition, the court must accord deference to the SBA's decision-making ability, given that it is the agency responsible for making responsibility determinations.

First, plaintiff refutes the SBA's assertion that the contract required $450,000.00 of working capital and that plaintiff possessed less than $10,000.00 of working capital. The $450,000.00 figure originated from Mr. Silikovitz, who, speaking in the abstract, indicated during deposition that given the size of the contract plaintiff hypothetically needed that amount of working capital to perform the job. Plaintiff maintains that the SBA should have considered the numbers that it submitted with its COC application, which indicated that plaintiff needed only $388,725.00 in working capital. The Harrisburg office originally made the negative finding concerning plaintiff's financial condition. In evaluating plaintiff's application, the Harrisburg office presumably considered plaintiff's figures, as opposed to the numbers which Mr. Silikovitz developed "off the top of ... [his] head" during a deposition occurring months after the SBA rendered its COC determination. Silikovitz Dep. at 47.

Second, plaintiff charges that the SBA did not consider that plaintiff intended to use the progress payments on the Rudee Inlet project as working capital. Nonetheless, the financial statements submitted by plaintiff indicate the inclusion of these payments. This information was before the SBA and presumptively formed part of its review.

Third, plaintiff argues that the SBA ignored the substantial equity plaintiff possessed in its equipment.[17] Specifically, plaintiff contends that the SBA erred in evaluating the book value of the Amber II and

---

17. Plaintiff relies on *Skytech*, 26 Cl.Ct. 251, to bolster its equity argument. Plaintiff contends that the contracting officer in *Skytech* found the bidder to be responsible even though the bidder had defaulted on several loans, overdrawn its bank accounts, and did not own the equipment needed for the contract. In deciding a challenge by another bidder, *Skytech* held that the contracting officer did not act arbitrarily and capricious-

ly in finding that the contractor qualified as responsible. This case concerns the SBA's decision of nonresponsibility. Moreover, responsibility decisions are based on the facts and circumstances of each case. The record in *Skytech* reflected that the winning contractor had substantial assets, despite its other financial problems.

should have relied upon the condition and value survey prepared by Vener Marine. The survey, conducted on February 17, 1991, indicated that the fair market value of the Amber II was between $550,000.00 to $600,000.00, whereas the book value was only $120,000.00. In argument defendant discredited the study, noting that three years had passed since the study was performed and that the SBA would be remiss in not considering that the equipment depreciated during that interval. Plaintiff rejoined that defendant ignored the fact that the Amber II had just completed a job and was in good working order. The court acknowledges that the Amber II may have been in good condition, but the application of standard accounting principles of depreciation is not irrational and, hence, neither arbitrary nor capricious.

Fourth, plaintiff notes that the SBA did not consider that the Government owed plaintiff approximately $1 million on various Government contracts. Plaintiff's position rests on the assumption that the Government improperly withheld funds. Plaintiff has not established the veracity of this assumption and will not be able to do so until the litigation concerning the contracts at issue is concluded. The SBA therefore did not err by failing to obtain information concerning this litigation. Moreover, if the cases were resolved during the period of SBA review, plaintiff bears the burden of informing the SBA of such developments.

Finally, plaintiff notes that the SBA should have contacted it to ascertain the basis of the unidentified $60,000.00 entry contained in the financial forms for June 1994. In briefing, plaintiff explained the basis for the entry, noting that it "was currently on a contract and ... expected a substantial net profit" of $60,000.00 which would be used to finance the beginning of the Rudee Inlet project. Plf's Br. filed Sept. 20, 1994, at 17. Although it is unclear what significance if any, was accorded to the figure, resolution of the working capital issue is not necessary for the disposition of this case.

The evidence before the SBA, specifically the outstanding IRS tax deficiency and omission of the 1993 financial statement, demonstrate that the SBA did not act arbitrarily and capriciously in failing to pursue additional information or in seeking clarification of issues. Such finding is particularly appropriate given that plaintiff bears the burden of establishing responsibility. A contrary decision would shift the burden of establishing responsibility to the SBA. Under plaintiff's theory, if a substantial tax deficiency appeared fatal because it had not been resolved, the SBA would be obligated to monitor the negotiations to determine if the requisite degree of resolution had been achieved within the 15–day period for a COC review. In addition, under this approach the SBA would be required to endeavor to have the contractor supply alternative information that could substitute for missing financial statements—all within 15 days and after the SBA had instructed the contractor to submit this information in the first place.

Although the court shares plaintiff's view that the SBA exists to foster small businesses and is expected to work with them, a ruling for plaintiff in this case would mean that the SBA cannot disapprove financial condition based on a substantial unresolved tax deficiency. Such a ruling would divest the Government of its right to act within the bounds of rationality. Accordingly, because of the significant tax deficiency and omitted financial information, the SBA did not act arbitrarily or capriciously in denying the COC without seeking additional information or clarification.

Plaintiff makes one final argument in an effort to characterize the actions of the SBA as arbitrary and capricious. In contracts incorporating the payment and performance bond obligations of the Miller Act, like the subject contract, plaintiff posits that a financial analysis is not required. Plaintiff relies on the deposition of Mr. Silikovitz and two Comptroller General decisions, 33 Comp.Gen. 549 (May 12, 1954), and 6 Comp.Gen. 557 (Mar. 1, 1927).

Plaintiff cites the following deposition language:

Q. Does the committee do the same thing [*i.e.*, perform a financial evaluation] for every COC?

A. The vast, vast majority.

Q. Can you explain to us any instances when it doesn't?

A. When they are referred for-it's a legal term, the Miller Act or something. That doesn't involve financial, but that is the only time, to my knowledge.

Q. So if something is referred for a COC under the Miller Act, there is no financial review by you?

.... [Objection.]

A. I may be incorrect. There is some kind of legal act which our counsel, who is a member of the committee, tells me that a financial analysis is not necessary. I just rely on counsel.

Silikovitz Dep. at 24–25. The quoted language does not raise a genuine issue of material fact concerning whether the SBA is precluded from performing financial reviews in Miller Act cases.[18]

Mr. Silikovitz demonstrates confusion and, at best, a knowledge that under some set of circumstances, a financial review is not required. His testimony establishes nothing more than that he is vague about which legal act requires no financial review. In addition, Mr. Silikovitz testified that he plays no role in determining whether a financial analysis should be performed; he simply conducts the review in those cases where he is directed to do so. The court cannot resolve conflicts in evidence on summary judgment or make credibility determinations. The extracts from the Silikovitz deposition inculpate neither proscription. Taken as a whole, in the light most favorable to plaintiff as the opponent of summary judgment, Mr. Silikovitz' testimony is a vague reference to the basis for referrals, a subject over which he says he has no competence. To drag this proceeding to trial on such elusive testimony is not justified.

Plaintiff's legal authorities are also inapposite. 33 Comp.Gen. 549 states that a performance bond may be a factor considered in the responsibility assessment. This decision does not indicate that the existence of a bond alone precludes the SBA from making its required assessment of credit. 33 Comp. Gen. at 551 (stating performance bonds are

but one factor for consideration in the responsibility determination). The second decision, 6 Comp.Gen. 557, found that a newly formed concern could not be rejected as a bidder where the contract required the bidder to post certain bonds. This issue is irrelevant. Plaintiff also cites *Latecoere Int'l, Inc. v. United States Dep't. of Navy*, 19 F.3d 1342 (11th Cir.1994), which is relevant only if plaintiff can establish that the SBA violated established policies.

█ In the absence of any support for plaintiff's proposition, the court finds that the SBA may perform a financial analysis in Miller Act cases, but must consider the bonding requirement in assessing responsibility. Based on the record, it does not appear that the SBA acted arbitrarily and capriciously with regard to this matter.

## CONCLUSION

The SBA in conducting a COC review may review all elements of responsibility and is not limited to the deficiencies cited by the contracting officer. The SBA therefore did not exceed its authority by considering plaintiff's financial condition, an issue not cited in the contracting officer's referral.

In addition, neither FAR § 19.602–2(a)(2) nor 13 C.F.R. § 125.5(e) required the SBA to conduct a site visit of plaintiff's facility. The court will not extend FAR § 19.602–2(a)(2) to require the SBA to investigate any issue concerning responsibility upon which the SBA seeks to base its denial of a COC.

The substantial tax delinquency and omitted financial information indicate that the SBA acted rationally in denying the COC without seeking additional information or clarification from plaintiff.

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment dismissing the complaint.

---

18. The court does not rely on Mr. Koppel's supplemental affidavit in making this finding.

IT IS SO ORDERED.

No costs.