**HAWPE CONSTRUCTION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–69C.

United States Court of Federal Claims.

May 5, 2000.

F. Gregory McKenna, Denver, Colorado, attorney of record for plaintiff. Daniel L. Rosenberg and Hugo Teufel, of counsel.

Sean C. Griffin, Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for defendant. David M. Cohen, Director, and Todd M. Hughes, Assistant Director.

## *OPINION*

FUTEY, Judge.

This post-award bid protest is before the court on defendant's motion to dismiss and motion for judgment on the administrative record and plaintiff's cross-motion for judgment on the administrative record. Hawpe Construction, Inc. (plaintiff) claims that the United States government (defendant), acting through the United States Navy Officer in Charge of Construction, Marianas (OICC), improperly and unlawfully awarded a contract to BioGenesis Pacific, Inc. (BPI), because BPI did not meet a requirement for a Standard Industrial Classification (SIC) Code certification in the Request for Proposals (RFP) issued by the OICC. Plaintiff alleges that this unlawful award will severely prejudice and damage plaintiff's business. Defendant counters that the requirement in the RFP was mistakenly believed by the OICC to be required by the Small Business Administration (SBA), when in fact it was not; that the SBA, within its purview, properly found BPI to be a qualified small business despite its failure to meet the requirement in the RFP; and that plaintiff was not prejudiced by the OICC's failure to insist upon BPI's strict compliance with the RFP. Defendant in the alternative asserts that this court lacks subject matter jurisdiction due to plaintiff's failure to exhaust its administrative remedies, stating that this matter is essentially a protest over size determinations properly adjudicated by the SBA.

## *Factual Background*

The United States Navy needed a contractor to install and repair roofs at the Navy Public Works Center in Guam (PWC). The PWC informed the OICC of this need. The OICC prepared an RFP for a roofing installation and repair contract (Contract),[1] and also determined that the Contract could be performed by a small business as defined in the SBA regulations. The OICC therefore decided to solicit the Contract as a competitive procurement under the SBA's section 8(a) program.[2] On March 4, 1999, the Navy Contracting Officer (CO), Jean Tarlton, contacted SBA with the OICC's offer of the RFP, and Assistant District Director Mike O'Neill, acting on behalf of the SBA, accepted the offer the same day.

The OICC had to meet certain requirements in order for its offer of the RFP to be accepted by the SBA. Usually, the SBA enters directly into a contract with the government agency, and then subcontracts the work to a private small business. The SBA itself determines which potential subcontractors meet the standards for certification as a section 8(a) small business. For Department of Defense (DoD) contracts such as the Contract in this case, however, the government agency contracts directly with the small business under the supervision and with the approval of the SBA. The agency essentially performs the work of the SBA, asking for information that directly affects a bidder's small business status, while taking guidance from the SBA itself.[3]

The OICC, therefore, needed to obtain size information from the bidding companies directly via the RFP, which information the SBA usually requests and analyzes. In this regard, Ms. Tarlton included in the RFP a requirement for proof that a bidding company was formally certified under SIC Code 1761. Under a now defunct procedure, a

1. RFP no. N62766–99–R–0425, entitled "Indefinite Delivery Indefinite Quantity Contract for Roofing Systems Installation and Repair, Guam and Northern Mariana Islands."

2. Section 8(a) of the Small Business Act creates a special program to set aside contracts for small disadvantaged businesses, such as those owned

by women and members of certain minority groups. 15 U.S.C. § 638(a) (1994).

3. 48 C.F.R. § 219.800 (1999); Administrative Record (A.R.), letter from Jean Tarlton to BPI, Sept. 25, 1999, at 1279.

small business gained certification under an SIC Code apparently by application to the SBA, asking for the SBA's approval to include such SIC Code in its business plan. No specific document embodied the certification. Instead, the small business was permitted to include the SIC Code in its business plan information.[4] SIC Code 1761 pertained specifically to roofing, siding and sheet metal work. When Mr. O'Neill viewed the OICC's offer, he confirmed that only bidders with certification under SIC Code 1761 would be eligible to submit offers.[5] Mr. O'Neill also stated, however, that the SBA would make the final determination on eligibility after the OICC awarded the contract.[6] The language in the RFP, created by the OICC, stated that bids which did not provide information on several subjects, including whether a bidder had SIC Code 1761 certification, would be deemed "nonresponsive" and would not be considered.[7]

On May 3, 1999, the OICC issued the RFP for the roofing work. Several companies responded to the RFP, including plaintiff and BPI. The OICC rated the various bidders independently based on multiple factors. Plaintiff received ratings of "acceptable" in each category, and had quoted a bid price for the work of approximately $13.9 million. BPI received ratings of "highly acceptable" in all categories except one, in which it received an "acceptable" rating. BPI's bid price was approximately $14.9 million. In reviewing the qualifications of the bidders, Ms. Tarlton concluded that Mr. Gerald Lam, BPI's principal, Mr. Richard J. Winget, its

Guam program manager, and Mr. Richard C.I. Yoon, its project manager, each had over 20 years of roofing experience.[8] In addition, BPI had previously performed multiple roof repair contracts.[9] The OICC therefore found BPI to be capable of performing the work under the Contract.

During the OICC's evaluation, Ms. Tarlton inquired into the small business status of both BPI and plaintiff, among other bidders.[10] She could not determine whether these bidders had SIC Code 1761 certification, as the RFP required. While plaintiff eventually provided proof that it did in fact have SIC Code 1761 certification,[11] BPI submitted a letter stating that Mr. O'Neill would confirm that BPI was eligible under the requirements of the code.[12] When asked by Ms. Tarlton about the status of these bidders, Mr. O'Neill informed her that his earlier statements concerning the SBA requirements for SIC Codes had been erroneous.[13] Under two new regulations, which went into effect July 31, 1998, and were still in effect when the RFP issued in May 1999, the SBA had removed the requirement that a small business have formal SIC Code certification in order to bid on a contract. 13 C.F.R. § 124.402 (1999); 13 C.F.R. § 124.507 (1999). Instead, the small business only needed to meet the qualifications set out in the SIC Code.[14] Mr. O'Neill therefore advised Ms. Tarlton not to exclude BPI or any of the bidders from consideration due to a lack of SIC Code 1761 certification. Ms. Tarlton accepted Mr. O'Neill's guidance, considered the bidders in question, and awarded BPI the Contract on September 29, 1999.

4. Transcript of Oral Argument on Cross–Motions for Judgment on the Administrative Record held on April 25, 2000 (Tr.), at 6–7.

5. A.R., letter from Mike O'Neill to Jean Tarlton, March 4, 1999, at 6.

6. *Id.*, OICC Source Selection Plan, at 6, 1152; Tr. at 11, 42; 13 C.F.R. § 124.507(b)(3) (1999); 48 C.F.R. § 19.805–2(c)(2) (1999).

7. A.R., RFP, at 43. The RFP also included a Federal Acquisition Regulation (FAR) provision which required SIC Code 1761. *Id.* at 62; 48 C.F.R. § 52.219–18 (1998).

8. A.R. at 761–787.

9. *Id.* at 600–91, 789–866, 980.

10. *Id.* at 1596.

11. *Id.* at 988.

12. *Id.*, letter from BPI accompanying proposal response to the OICC, June 7, 1999, at 527.

13. *Id.*, electronic mail message from Mike O'Neill to Jean Tarlton, Apr. 28, 1999, at 13.

14. SIC Code certification was in fact impossible for BPI to obtain, as the SBA had discontinued the practice of certification due to the new regulatory scheme. Tr. at 7.

After the award, plaintiff requested a meeting with OICC officials, including Ms. Tarlton, to discover why it had been denied the Contract award in favor of BPI. Pursuant to the Federal Acquisition Regulation (FAR), the OICC held a debriefing with plaintiff over the telephone on October 6, 1999. 48 C.F.R. § 15.506 (1999). Plaintiff at that time discussed with Ms. Tarlton the fact that BPI did not have SIC Code 1761 certification, and that BPI apparently had not done the type of work required under the Contract. Ms. Tarlton informed plaintiff that the SIC Codes were no longer mandatory for eligibility to bid on section 8(a) contracts, and that the information provided by BPI demonstrated that it had the right qualifications to perform the work under the Contract.

Unsatisfied with Ms. Tarlton's explanation, plaintiff instituted a protest before the United States General Accounting Office (GAO). The GAO dismissed the protest, stating that the crux of plaintiff's argument was a protest over the size determination of BPI. *Hawpe Constr., Inc.*, B–283902 (Oct. 14, 1999). The GAO stated that "[t]he authority to set size standards (i.e., the size specification of 'small') and the authority to determine which concerns fall within these standards rests exclusively with the SBA." *Id.* 15 U.S.C. § 637(b)(6) (1994). Plaintiff's request for reconsideration to the GAO was also denied. *Hawpe Constr., Inc.*, B–283902.2 (Dec. 2, 1999).

Plaintiff filed a complaint and an application for preliminary injunction protesting the award to BPI in this court on February 9, 2000. In its Complaint plaintiff asked the court to (1) preliminarily enjoin defendant from undertaking performance of the Contract with BPI as contractor; (2) permanently enjoin defendant from same performance; (3) directly award the Contract to plaintiff; and (4) direct defendant to pay plaintiff's bid preparation and proposal costs. In a telephonic conference held on March 13, 2000, plaintiff agreed to withdraw its application for a preliminary injunction so that the court could proceed directly to a hearing and decision on the merits concerning plaintiff's request for a permanent injunction based on the administrative record.

*Discussion*

## I. *Motion to Dismiss*

Defendant has filed a motion to dismiss for failure to exhaust administrative remedies, claiming that the court lacks subject matter jurisdiction under RCFC 12(b)(1). In ruling on such a motion, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1415 (Fed.Cir.1989); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683; *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). If the motion challenges the truth of the jurisdictional facts alleged in the complaint, however, the court may consider relevant evidence in order to resolve the factual dispute. *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991). Plaintiff bears the burden of establishing subject matter jurisdiction. *KVOS, Inc. v. Assoc. Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Rocovich*, 933 F.2d at 993.

Defendant claims that plaintiff's protest is over the size determination of BPI, and such protest is properly brought first before the SBA. *See* 48 C.F.R. § 19 (1999); 13 C.F.R. § 121.1001 (1999). Because such determination falls within the SBA's "special competence," defendant argues plaintiff should be barred from suit in this court until the SBA has made a final determination on its protest. *See Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed.Cir.1998) (quoting *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)).

The doctrine of exhaustion of administrative remedies provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."

*Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). *See McKart*, 395 U.S. at 193, 89 S.Ct. 1657. In cases where a litigant seeks judicial relief before the administrative process is complete, courts commonly apply the exhaustion doctrine to avoid premature interruption of the administrative process. *McKart*, 395 U.S. at 193, 89 S.Ct. 1657. Use of the exhaustion doctrine "allow[s] an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972) [citations omitted].

■ Courts must apply the exhaustion doctrine with "an understanding of its purposes and of the particular administrative scheme involved." *McKart*, 395 U.S. at 193. If there is a statute mandating that a party exhaust its administrative remedies before seeking judicial review of the agency's decision, then the exhaustion doctrine automatically applies to deprive a reviewing court of subject matter jurisdiction over a claim filed by a party who has failed to exhaust its administrative remedies under that statute. *Id.* If no statute exists, or if the relevant statute does not mandate exhaustion of remedies, however, then the reviewing court has jurisdiction over claims filed by plaintiffs who failed to exhaust their administrative remedies. *See Omni Moving & Storage of Va., Inc. v. United States*, 21 Cl.Ct. 224, 230 (1990); *see also, e.g., Mathews v. Eldridge*, 424 U.S. 319, 328, 330, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Montgomery v. Rumsfeld*, 572 F.2d 250, 253–54 (9th Cir.1978).

■ Defendant's motion fails for two fundamental reasons. First, this post-award bid protest is not concerned with the size determination of BPI. Plaintiff does not dispute that BPI was a small business qualified to receive the Contract.[15] Instead, plaintiff claims that the OICC and the CO breached an implied-in-fact contract between defendant and plaintiff. Plaintiff explains that the breach occurred when the OICC failed to enforce a requirement in the RFP that had been specifically and plainly included as a prerequisite to bidding on the Contract.[16] Plaintiff further asserts that this breach of the implied-in-fact contract prejudiced its interests in the solicitation, because defendant awarded the Contract to BPI. Plaintiff's claims therefore are not "in essence" a size protest, and the administrative remedies of the SBA are of no importance in this case.[17]

■ Second, the court cannot require plaintiff to exhaust its administrative remedies. In *Darby v. Cisneros*, 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), the Supreme Court prohibited the imposition of exhaustion requirements beyond those set forth in the Administrative Procedures Act (APA), when the act is applicable to an action in court. 509 U.S. at 154, 113 S.Ct. 2539; *see also* 5 U.S.C. § 704 (1994). The APA states that the exhaustion doctrine can require a plaintiff to seek recourse on its claim through administrative remedies only when the statute that gives rise to plaintiff's claims either (1) specifically demands exhaustion of administrative remedies before recourse to judicial review will become available, or (2) requires appeal to a "superior agency authority" and states that during such an appeal the previous decision of the agency will remain "inoperative." *Id.*

As will be explained in further detail below, the APA is applicable to the implied-in-fact contract and the agency action taken in this case. 5 U.S.C. § 701 (1994); *DGS Contract Serv., Inc. v. United States*, 43 Fed.Cl. 227, 234 (1999). It requires the court to look to the applicable statute(s) to determine whether exhaustion of administrative remedies is required. Plaintiff's cause of action arises under the contracts and bid protest jurisdiction of the Tucker Act, 28 U.S.C.

---

**15.** *Id.* at 27.

**16.** *Id.* at 31.

**17.** Indeed, the administrative remedies provided by the GAO are better suited to adjudicating the issues of this case, and plaintiff has availed itself of these remedies before coming to this court: it protested the OICC's decision before the GAO and also requested reconsideration. Both protests were denied, and plaintiff then instituted proceedings in this court.

§ 1491(b)(1) (Supp. II 1996), which does not require exhaustion of administrative remedies for post-award bid protests. Plaintiff's claims, therefore, are properly before the court. Accordingly, defendant's motion to dismiss for failure to exhaust administrative remedies is denied.

## II. *Motion for Judgment on the Administrative Record*

This court will next address the parties' cross-motions for judgment on the administrative record, utilizing the same standard as it applies to a motion for summary judgment. RCFC 56.1; *Nickerson v. United States,* 35 Fed.Cl. 581, 588 (1996), *aff'd,* 113 F.3d 1255 (Fed.Cir.1997). Under this standard, the court will grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary of DHHS,* 998 F.2d 979 (Fed.Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir. 1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir. 1987)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). It therefore does not follow that if one motion is rejected, the other is necessarily supported. *Id.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* (citing *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992)).

Plaintiff in its cross-motion has asked the court to issue a permanent injunction and a directed award of the Contract in its favor. This court obtained jurisdiction to hear post-award bid protest actions such as this one

when Congress amended the Tucker Act in 1996. 28 U.S.C. § 1491(b)(1). The court reviews the challenged agency decisions according to the standards set out in the APA, 5 U.S.C. § 706 (1994). Thus, the court must determine whether defendant's actions toward plaintiff were:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . .

5 U.S.C. § 706(2).

When deciding on a motion for judgment on the administrative record, the court's scope of review generally is limited to the administrative record developed by the agency. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court"). The court, however, may allow the parties to supplement the administrative record in certain limited situations. *DGS,* 43 Fed.Cl. at 235; *Aero Corp., S.A. v. United States,* 38 Fed.Cl. 408, 411 (1997) (enumerating the eight circumstances in which courts permit the supplementation of the administrative record). No single factor, however, colors the consideration of the court in this case because neither party has put forward any arguments advocating the admittance of evidence outside the administrative record. The court therefore will rely solely on the administrative record.

When the government solicits bids on a contract, it automatically enters into an implied-in-fact contract to treat the bidders fairly. *IMS Servs., Inc. v. United States,* 33 Fed.Cl. 167, 178 (1995); *see also Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203 (1974); *Crux Computer Corp. v. United States,* 24 Cl.Ct. 223, 225 (1991). This implied-in-fact contract between the government and bidders on the underlying contract requires the government to fully and fairly consider all bids submitted in accordance with the invitation for bids. *E.W.*

*Bliss Co. v. United States,* 77 F.3d 445, 447 (Fed.Cir.1996); *Ingersoll–Rand Co. v. United States,* 2 Cl.Ct. 373, 375 (1983). The government is said to breach the implied contract "if its consideration of offers is found to be 'arbitrary and capricious toward the bidder-claimant.' " *Central Ark. Maintenance, Inc. v. United States,* 68 F.3d 1338, 1341 (Fed.Cir.1995) (quoting *Keco,* 492 F.2d at 1203). "[O]nly violations that amount to a breach of the government's implied contract to consider an offer fairly and honestly will support the court's exercise of its injunctive powers." *Central Ark.,* 68 F.3d at 1342; *United Int'l Investigative Servs., Inc. v. United States,* 41 Fed.Cl. 312, 318 (1998).

■ The essential question pertinent to the court's ruling in this case, therefore, is whether defendant violated the "arbitrary and capricious" factor in the APA standard when it considered plaintiff's bid and awarded the Contract to BPI. 5 U.S.C. § 706(2)(A). In determining whether the agency has acted arbitrarily or capriciously towards plaintiff, the court must consider four factors. *Keco,* 492 F.2d at 1203. Specifically, the court must determine whether: (1) there was subjective bad faith on the part of procurement officials; (2) there was not a reasonable basis for the procurement decision; (3) the procuring officials acted outside the discretion entrusted to them; and (4) pertinent statutes or regulations were violated. *Id.* at 1203–04; *Metric Sys. Corp. v. United States,* 42 Fed. Cl. 306, 310 (1998).[18] There is, however, "no requirement or implication ... that each of the factors must be present in order to establish arbitrary and capricious action by the government." *Prineville,* 859 F.2d at 911. Plaintiff must demonstrate by clear and convincing evidence that defendant's actions towards it were arbitrary and capricious. *United Int'l,* 41 Fed.Cl. at 318 (citing *ECDC Envtl., L.C. v. United States,* 40 Fed.Cl. 236, 241 (1998)).

Although defendant has made no accusations of bad faith (*Keco* factor 1), plaintiff argues that the decision by defendant to award the Contract to BPI was without a reasonable basis (*Keco* factor 2). Plaintiff claims that BPI had not done roofing work in the past, and had submitted a bid that was over $1 million higher in cost than plaintiff's bid.

■ When reviewing agency action, the APA requires a "thorough, probing, in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Contracting officials may properly exercise wide discretion in their evaluation of bids and the application of procurement regulations. *Electro–Methods, Inc. v. United States,* 7 Cl.Ct. 755, 762 (1985); *RADVA Corp. v. United States,* 17 Cl.Ct. 812, 818 (1989), *aff'd without op.,* 914 F.2d 271 (Fed. Cir.1990). This discretion is especially broad in negotiated procurements, such as the one involved in the present case. *CACI Field Servs., Inc. v. United States,* 13 Cl.Ct. 718, 725 (1987), *aff'd,* 854 F.2d 464 (Fed.Cir.1988). For this reason, the court cannot substitute its judgment for that of the agency, and "should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable." *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983). *See also Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *CRC Marine Servs., Inc. v. United States,* 41 Fed.Cl. 66, 83 (1998).

■ The record shows that BPI's principal, its Guam program manager, and its project manager have extensive experience in roofing work, each person's expertise going back two decades or more. The work of these individuals has been competent, and BPI's reputation in general shows no significant weaknesses.[19] Plaintiff has not offered any argument that squarely refutes the im-

---

**18.** This test is used by the court in determining a plaintiff's claims for injunctive relief as well as its claims for bid preparation and proposal costs. *Southfork Sys., Inc. v. United States,* 141 F.3d 1124, 1132, 1132 n. 5 (Fed.Cir.1998); *Graphic-* *Data, LLC v. United States,* 37 Fed.Cl. 771, 779 (1997); *United Int'l Investigative Servs., Inc. v. United States,* 41 Fed.Cl. 312, 318 (1998).

**19.** A.R. at 600–91, 789–866, 980.

portance of these facts and defendant's proper application of these facts to its award decision. In addition, plaintiff's attack on defendant's decision is not bolstered by the fact that BPI's bid price was somewhat higher than plaintiff's. It is well-established that simply because a bid price for one proposal is higher than another does not mean that the former proposal should be passed over in favor of the latter. Instead, the "best value" to the government will be discerned by many factors, price being only one of those factors. *CRC*, 41 Fed.Cl. at 83; 48 C.F.R. § 9.103(c) (1999). Plaintiff's assertions that defendant's decision was unreasonable or irrational are therefore unavailing.

In addition, plaintiff asserts that defendant abused its discretion (*Keco* factor 3) in implementing the procurement procedure. Plaintiff alleges that defendant in this case made a blatant error in the bidding procedure, such that one of the plain requirements that were a *sine qua non* for eligibility on the Contract was ignored, therefore tainting the procurement. Plaintiff thus asserts that BPI was neither a responsive nor a responsible bidder, and its bid did not deserve defendant's consideration. Plaintiff states that defendant should have informed the bidders of the change in requirements via an amendment to the RFP, and claims it was prejudiced because it could have opted not to bid.[20] Defendant counters that the SBA alone determines the eligibility issues raised by the requirement, and that the SBA determined clearly that it was satisfied that BPI was qualified to bid for and perform the Contract. Defendant also maintains that plaintiff was on notice of the proper size requirement regulations because they were published in the Federal Register, and were readily available to potential small business bidders.[21]

■ In considering the abuse of discretion issue, the court must weigh the importance of defendant's adherence to the erroneous SIC Code 1761 certification requirement in the RFP against the importance of applying the correct standard in consideration of bids, as was required by the binding SBA regulations. According to the implied contract that is formed by the RFP, defendant technically breached the requirement to consider only those bidders that had SIC Code 1761 certification. *See Keco* at 1203. Although this breach is properly considered error, "to prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed.Cir.1996). *See also Central Ark.*, 68 F.3d at 1342 (only clear and prejudicial violations warrant relief). "This requires proof that, had it not been for [the error in procurement], 'there was a reasonable likelihood that the protester would have been awarded the contract.'" *Candle Corp. v. United States*, 40 Fed.Cl. 658, 665 (1998) (quoting *Data Gen.*, 78 F.3d at 1562). *See also Day & Zimmermann Servs. v. United States*, 38 Fed.Cl. 591, 597 (1997); *Hydro Eng'g, Inc. v. United States*, 37 Fed.Cl. 448, 471 (1997).

■ The failure to enforce the requirement or amend the RFP technically constituted error in procurement committed by defendant. *See* 10 U.S.C. § 2305(b)(1) (1994) (awards to be based solely on the factors described in the RFP); 48 C.F.R. § 15.606(a), (c) (1999) (requiring amendment of an RFP in which the requirements have been altered). Plaintiff nevertheless was on notice that the SBA had changed its SIC Code certification requirements. Although defendant did not inform plaintiff of the problem with the RFP, plaintiff had access to the new regulations in the Federal Register and the Code of Federal Regulations.[22] Publication in the Federal Register effects constructive notice of the contents of a federal regulation to a person subject to or affected by those contents. "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92

---

**20.** Tr. at 46–47.

**21.** *Id.* at 34–35.

**22.** *Id.*

L.Ed. 10 (1947). *See also Wolfson v. United States*, 204 Ct.Cl. 83, 492 F.2d 1386, 1392 (Ct.Cl.1974) (citing *Fed. Crop*, 332 U.S. at 384–85, 68 S.Ct. 1) ("It is well settled that when regulations are published in the Federal Register they give legal notice of their contents to all who may be affected thereby."); *Melrose Assocs., LP v. United States*, 43 Fed.Cl. 124, 146 (1999); *Lynsky v. United States*, 130 Ct.Cl. 149, 126 F.Supp. 453, 456 (1954); *see also ACRO–TECH, Inc.*, B–270506.2, 96–1 CPD ¶ 193 (Apr. 18, 1996) (stating that misinformation concerning federal regulations given by federal employees does not negate the constructive notice of such regulations attributed to bidders). Defendant applied these publicly available regulations correctly and fairly in considering plaintiff's eligibility and the other bidders' eligibility. Plaintiff therefore suffered no prejudice.

In addition, although defendant should amend an RFP and notify all bidders of requirement changes, the changes usually concern technical requirements for performance, such as materials to be used or design specifications. *See, e.g., Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1368 (Fed.Cir.1999);[23] *Int'l Filter Mfr. Corp.*, B–235049, 89–1 CPD ¶ 586 (June 21, 1989) (holding that when an agency changes requirements for responsibility in an RFP it is obligated to inform interested bidders of the change). As mentioned, the SBA normally deals with size issues (such as SIC Code certification), while the contracting agency (here the OICC) deals with the technical details of a bidder's responsibility. It is in the peculiar circumstance of a DoD contract that the concerns of the SBA must be iterated by the offering agency in the RFP itself. The SBA nevertheless retains the ultimate right to determine whether its requirements have been met.[24] Because the SBA regulations after July 31, 1998, no longer required SIC Code certification, the SBA would have found BPI eligible after the initial award no matter whether BPI had SIC Code 1761 certification or not. This requirement in the RFP, therefore, was never a final determination made by the OICC at any time in the bidding process. It is clear that the SBA would have confirmed BPI's status as an eligible bidder under section 8(a) and SIC Code 1761.

A new bid solicitation would therefore fail to provide plaintiff with a fairer consideration, because both BPI and plaintiff would still be competing under the same standard as applied before. Any new bidding process would be in accord with the publicly available SBA regulations in effect at the time the RFP was issued, and therefore the SIC Code certification requirement would not be included in the RFP.[25] Plaintiff here was not prejudiced, because its bid received fair consideration according to applicable SBA regulations, consideration equal to that of BPI.[26]

---

**23.** In *Alfa Laval*, the Navy waived a responsibility requirement in an RFP for a technically ineligible bidder, therefore awarding it the contract. The Court of Appeals for the Federal Circuit (Federal Circuit) found that the waiver constituted prejudicial error and remanded the case to this court for further proceedings. The Federal Circuit held that the Navy could not change the requirements based on its "view of the appropriateness of the standard ...." *Alfa Laval*, 175 F.3d at 1367. The Navy in the solicitation included requirements based on its own needs and not on binding agency regulations. *Id.* In the present case, defendant did not base its decision on its view of a subjective appropriateness, but instead on the SBA regulations that plainly described the requirements for size eligibility. Furthermore, in *Alfa Laval*, there were only two bidders competing for the contract. One of them, the initial awardee, submitted a bid that showed its inability to perform the contract. *Id.* Because the protesting bidder was sure to win if the other bidder was disqualified, the court

found that the Navy's error was prejudicial. *Id.* at 1368. In the present case, there were several different businesses submitting bids on the RFP, and the awardee, BPI, has been recognized by both sides in this action as a qualified and eligible bidder under the applicable SBA regulations. Plaintiff therefore would not be assured of the Contract award. The holding in *Alfa Laval* is therefore inapposite to the facts of this case.

**24.** A.R. at 6. *See* 13 C.F.R. § 124.507(b)(3); *see generally* 48 C.F.R. § 219.800.

**25.** Indeed, BPI would have a valid ground for its own bid protest action if it were excluded based on the improper inclusion of the SIC Code certification requirement. Tr. at 43–44.

**26.** Plaintiff does not dispute that its bid was treated fairly under the applicable SBA regulations on size eligibility. *Id.* at 22.

Without the error in the RFP, plaintiff would stand the same chance of obtaining the Contract award as it did in the actual procurement that took place in this case. Plaintiff cannot show that it was likely to be awarded the Contract if not for defendant's error.[27] Under these circumstances, the court finds that plaintiff did not suffer prejudice in the consideration of its bid. *See Data Gen.*, 78 F.3d at 1562; *Candle*, 40 Fed.Cl. at 662.

Finally, plaintiff assails the propriety of defendant's actions under *Keco* factor 4, claiming two circumstances of a violation of pertinent statutes and regulations. First, plaintiff asserts that defendant's failure to amend the RFP to reflect the SBA's change in requirements for SIC Code 1761 amounts to a violation of the Competition in Contracting Act (CICA), 41 U.S.C. § 253 (1994). CICA states that an executive agency "shall obtain full and open competition through the use of competitive procedures in accordance with [CICA's requirements] and the Federal Acquisition Regulation ...." 41 U.S.C. § 253(a)(1)(A). A court may invalidate a contract award when the government fails to properly solicit bids when such competition is required. *See, e.g., Chas. H. Tompkins Co. v. United States*, 43 Fed.Cl. 716 (1999).

■ Although Ms. Tarlton's and Mr. O'Neill's handling of the mistaken requirement of SIC Code 1761 in the RFP could have caused small businesses to forego bidding for the Contract, plaintiff has neither provided any evidence that this actually occurred, nor has any unfairly excluded bidder intervened in this matter. If the court presumes that competition was stifled, however, this facial violation of CICA does not require a reversal of the Contract award to BPI. A violation of a statute does not constitute a per se breach of the government's duty to treat a bidder fairly and honestly. Such violation does not necessarily qualify as a ground for recovery in a bid protest action. *Keco*, 492 F.2d at 1204 ("[A] proven violation of pertinent statutes or regulations can, but

need not necessarily, be a ground for recovery."). Plaintiff here has not shown that defendant considered plaintiff's bid unfairly and dishonestly when it did not enforce the RFP term concerning SIC Code 1761 certification, because it was no longer considered a requirement. Nothing in the administrative record indicates that Ms. Tarlton or the SBA failed to consider all the bids, including plaintiff's and BPI's, in the same manner and under the same standards. Any violation of CICA does not amount to the "clear and prejudicial" error that must exist for the court to grant injunctive relief. *Central Ark.*, 68 F.3d at 1342.

Second, plaintiff argues that defendant violated FAR § 52.219-18(a)(1), which specifically requires that SIC Code 1761 be among the approved codes for a bidder to qualify as a section 8(a) small business under SBA regulations. *See* 48 C.F.R. § 52.219-18(a)(1). This regulation was in effect at the time of the RFP's issuance. As has been discussed, however, a sweeping change in requirements for section 8(a) small businesses had been made in 1998, stating that bidders did not have to attain certification under certain SIC Codes, but that they merely had to meet with the requirements of such codes. 13 C.F.R. §§ 124.402 and 124.507. Conflicts between FAR and SBA regulations should be resolved by looking to the SBA's latest intent on the issue and by relying on the SBA to determine which provision best implements the policies of the agency itself. *C & G Excavating, Inc. v. United States*, 32 Fed.Cl. 231, 239–40 (1994); *cf. Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.2d 696, 704 (5th Cir.1973). Here, although FAR § 52.219-18 was still in effect, it is clear that 13 C.F.R. §§ 124.402 and 124.507 were meant to remove such requirements. *See* 13 C.F.R. § 124.507(b)(2)(i); 65 Fed.Reg. 35,726, 35,734 (1998) ("SBA believes that the burden on an 8(a) Participant to obtain SBA approval for every SIC code ... hinders more than helps the Participant's business development.")

---

27. Plaintiff asserts that BPI would face more competition without the SIC Code certification requirement in the RFP, and therefore BPI is not assured of receiving the Contract under a new solicitation. This point, however, does not aid plaintiff in receiving relief from the court. The standard for relief requires that plaintiff is likely to receive the Contract, not that BPI is less likely to receive it. *Id.* at 25. If there are other contractors that believe they would have won the Contract, they have chosen not to intervene in this matter. *Id.* at 30.

As defendant has shown, the SBA's opinion on the matter is that the new provisions in the CFR override the old FAR provision. The court finds that the SBA's interpretation is correct, not only due to deference to the agency, but also due to its obvious earlier intent to rid small businesses of the burden of SIC Code pre-certification. *See C & G*, 32 Fed.Cl. at 240.[28] Defendant's actions with regard to the SIC Code 1761 requirement were in accord with applicable regulations in effect.

The court finds that defendant's erroneous requirement in the RFP did not cause unfair consideration of plaintiff's bid. There was, nevertheless, technically an "error" in the RFP that concealed the standard for eligibility from the bidders. Yet, even if the court were prepared to find that defendant's failure to enforce the SIC Code certification requirement arbitrarily and capriciously prejudiced its consideration of plaintiff's bid, this alone does not meet the test for the grant of injunctive relief. In order to obtain a permanent injunction, in addition to proving success on the merits, plaintiff must make three additional showings: (1) that it will suffer irreparable harm if injunctive relief is not awarded; (2) that granting relief serves the public interest; and (3) that the harm to be suffered by it outweighs the harm to the Government and third parties. *United Int'l*, 41 Fed.Cl. at 323 (citing *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir. 1993)); *ATA Defense Indus., Inc. v. United States*, 38 Fed.Cl. 489, 505 n. 10 (1997) (the "factors are the same as those considered for a preliminary injunction").

Plaintiff claims it will suffer irreparable harm that far outweighs any harm to defendant and BPI that would be caused by a permanent injunction. Although "harm" necessarily befalls any disappointed bidder when it does not receive a contract award, procurement error coupled with loss of business does not necessarily require injunctive relief. Obviously, if BPI loses its Contract with defendant, it will suffer harm equaling that facing plaintiff now. A remedy that simply shifts the harm from one party to another, especially in light of the correct consideration of both bids under SBA regulations, is not proper. Also, plaintiff has not provided definitive proof that the public interest would be better served by an injunction, except for plaintiff's lower-priced bid. In addition, although timeliness may not be as significant a factor in the permanent injunction context as in that of preliminary injunction, plaintiff's five-month delay in instituting proceedings in the court points to the case of a bidder that, while considering the procurement process to be flawed and unfair, is not absolutely reliant on injunctive relief from this court. *See High Tech Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed.Cir.1995).

Defendant's actions in this case were not arbitrary or capricious with regard to plaintiff. Indeed, defendant undertook to consider each bid fairly, equally, and in accordance with the regulations dictating the bidding procedure. While defendant did technically violate the terms of its own RFP, it did so in a manner that did not harm consideration of plaintiff's bid, and considered BPI's bid in accordance with federal regulation and law. This fact, coupled with the realization that the SBA had the ultimate decision on size determination, including the requirement for SIC Code 1761 certification, prevents the court from granting plaintiff's request for permanent injunction.

*Conclusion*

For the above-stated reasons, the court finds that it has subject matter jurisdiction over plaintiff's claims. Defendant's motion to dismiss is therefore denied. The court also finds, however, that plaintiff was not prejudicially harmed by any error committed by defendant in the procurement process. Plaintiff has not met the standard for injunctive relief. Defendant's motion for judgment on the administrative record is therefore granted. Plaintiff's cross-motion for judgment on the administrative record, including all of its requests for injunction and other

---

**28.** In accord with the SBA's new policy, FAR § 52.219–18 soon followed the lead of the amended SBA regulations, no longer requiring a certified SIC Code for eligibility. 48 C.F.R. § 52.219–18(a)(1) (1999).

relief, is denied. The clerk is directed to dismiss plaintiff's Complaint. No costs.