**DYNACS ENGINEERING COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Federal Data Corporation, Defendant–Intervenor.**

No. 00–166 C.

United States Court of Federal Claims.

Feb. 21, 2001.[1]

James S. Ganther, Tampa, FL, for plaintiff. Kathleen M. Wade, Tampa, FL, of counsel.

Michael D. Austin, with whom were David W. Ogden, Assistant Attorney General, David M. Cohen, Director, Robert E. Kirschman, Jr., Assistant Director, Civil Division, Department of Justice, Washington, DC, for defendant. Bernard J. Roan and Kaprice Harris, National Aeronautics and Space Administration, of counsel.

Michael A. Hordell, Washington, DC for defendant-intervenor. Laura Hoffman, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This is a remedy determination in a post-award bid protest action. Plaintiff, Dynacs Engineering Company (Dynacs), filed suit challenging the contract award decision of defendant, National Aeronautics and Space Administration (NASA or agency or government), to Federal Data Corporation (FDC or intervenor) for Microgravity Research, Development and Operations services.[2] On

---

1. The opinion and order was issued under seal on January 17, 2001. Pursuant to ¶ C of the ordering language in the January 17, 2001 opinion and order, the parties were instructed to identify protected/privileged material subject to

deletion. Only intervenor proposed a redaction. Brackets identify where material has been deleted.

2. NASA awarded the contract for microgravity flight hardware development and operations at

cross-motions for judgment on the administrative record, the court determined that the agency had unfairly favored the successful offeror in violation of the Federal Acquisition Regulations (FAR). In its Opinion and Order of October 25, 2000, the court sustained plaintiff's protest.[3] After reviewing the parties' briefing and hearing oral argument on the remedy issue, the court now awards bid preparation costs to plaintiff.

I. Background

For ease of reference, the court briefly reviews the facts of this case.[4]

In December 1998, NASA issued a request for proposal (RFP) for its Microgravity Research, Development, and Operations Contract (MRDOC). After an initial evaluation of the submitted offers, the agency advised Dynacs and FDC, as the offerors in the competitive range, that discussions would be held prior to the submission of final proposed revisions to the offerors' proposals. The agency's Source Evaluation Board (SEB) then identified to both offerors the weaknesses in their respective proposals and posed related questions. After receiving the offerors' responses to the posed questions, the agency requested the submission of final proposal revisions (FPR# 1).

In evaluating the offerors' FPR# 1 submissions, the SEB found that FDC had added "significant risk ... to their business approach" by "under-scop[ing]" the portion of the contract concerning the development and operation of the Fluids Combustion Facility (FCF). Although Dynacs had no significant weaknesses, the SEB did identify certain weaknesses in its FPR# 1 proposal. Based on the "significant risk" added to FDC's proposal, the agency decided to reopen discussions with the offerors to address new weaknesses identified in the offerors'

FPR# 1 submissions. After conducting the reopened discussions, the agency awarded the MRDOC to FDC. Dynacs challenged the award, filing protests before the General Accounting Office and, later, before this court.

Upon review of the administrative record, the court determined that NASA improperly conducted reopened discussions with the offerors in violation of FAR § 15.306(e)(1), which provides that "[g]overnment personnel involved in the acquisition shall not engage in conduct that favors one offeror over another." The court found that NASA conducted the reopened discussions in contravention of the agency's representations that it would not discuss any pre-FPR# 1 weaknesses in the offerors' proposals. The court specifically found that after FPR# 1, the agency unfairly discussed with FDC weaknesses in its proposal which had been identified to FDC before FPR# 1 without discussing with Dynacs the surviving weaknesses in its FPR# 1 proposal which had been identified to Dynacs before FPR# 1. Further, the court found that NASA's discussions with FDC, but not with Dynacs, of previously identified weaknesses was a significant and prejudicial error. Accordingly, in *Dynacs Eng'g*, the court sustained Dynacs protest and ordered the parties to propose further proceedings to address the proper remedy for plaintiff.

In response to the court's liability determination in *Dynacs Eng'g*, the parties submitted briefs addressing the remedy issue. Plaintiff urges in its briefing that this court enjoin the contract award to FDC and direct the award to Dynacs. Plaintiff's Brief in Support of an Award of Injunctive and Monetary Relief (Pl.'s Relief Br.) at 6–15. Alternatively, plaintiff urges the court to enjoin the contract award and order the agency to reopen discussions. *Id.* at 15–17. Dynacs adds that the court should award bid preparation costs.[5] *Id.* at 17–19.

---

NASA's John H. Glenn Research Center at Lewis Field, Cleveland, Ohio. The contract term was five years with three one-year options.

3. *Dynacs Eng'g Co. v. United States*, 48 Fed.Cl. 124 (2000) (determining liability).

4. This synopsis is taken from the comprehensive recitation of the facts set forth in *Dynacs Eng'g Co. v. United States*, 48 Fed.Cl. 124 (2000).

5. During oral argument on the issue of damages, FDC challenged the timeliness of Dynacs' request for bid preparation costs on the ground that plaintiff did not request such relief in its complaint. *See* Transcript of Oral Argument on December 14, 2000 (Damages Tr.) at 28–29. In its complaint, however, Dynacs specifically requested "such further relief as the Court may deem just and proper." *See* Complaint at p. 13. Rule 8(a) of the Court of Federal Claims provides that

NASA asserts, in its briefing, that the court lacks jurisdiction to direct the contract award to Dynacs. Defendant's Motion as to the Proper Remedy Based upon the Court's Liability Finding. (Def.'s Remedy Mot.) at 4–5. NASA adds that a limited remand for the purpose of reopening the bid process is unwarranted in this case because Dynacs would not have received the MRDOC award even if it had revised its weaknesses. *Id.* at 6–7. NASA explains that "Dynacs cannot maintain it was competitively disadvantaged by the agency's error." *Id.* at 7. Further, NASA argues, Dynacs is not entitled to injunctive relief because the administrative record "supports a finding that the error [in the procurement process] did not substantially impact upon Dynacs' ability to receive the award." *Id.* at 13. NASA contends that Dynacs is not entitled to bid preparation costs because the court did not find that the agency acted in bad faith. *Id.* at 19–20. Nor, NASA continues, is Dynacs entitled to attorneys' fees as an independent remedy or statutorily through the Equal Access to Justice Act, 28 U.S.C. § 2412.[6] *Id.* at 21–23.

FDC asserts that "[t]he Administrative Record and applicable law demonstrate[s] that Dynacs is not entitled to permanent injunctive relief." Intervenor's Brief Concerning Proposed Remedy (I.'s Remedy Br.) at 7. FDC urges that the contract award remain undisturbed and states that neither resolicitation nor reevaluation is necessary.[7] *Id.* at 9–12. FDC contends that bid preparation costs are not recoverable because plaintiff failed to expressly plead that it was seeking such a remedy.[8] *Id.* at 13. FDC allows, however, that court costs in conformance with Appendix I to the Rules of the Court of Federal Claims may be appropriate. *Id.*

## II. Discussion

### A. Injunctive relief is not an appropriate remedy in this case.

■ Injunctive relief is an extraordinary remedy. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993). The party moving for an injunction bears a heavy burden to demonstrate that such relief is warranted. *Bean Dredging Corp. v. United States*, 22 Cl.Ct. 519, 522 (1991). This court applies a four-part test in determining whether such relief is appropriate. *Id.* Specifically, the movant must show: (1) that there was a reasonable likelihood that it would have been awarded the contract; (2) that it will suffer irreparable harm if injunctive relief is not granted; (3) that awarding the relief serves the public interest; and (4) that the harm to be suffered by it outweighs the harm to the Government and third parties. *Hawpe Constr., Inc. v. United States*, 46 Fed.Cl. 571, 582 (2000); *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed.Cl. 312, 323 (1998). However, no one factor is dispositive in the determination because the " 'weakness of the showing regarding one factor may be overborne by the strength of the others.' " *Seattle Sec. Servs., Inc. v. United States*, 45 Fed.Cl. 560, 571 (2000) (quoting *FMC Corp.*, 3 F.3d at 427).

### 1. The court found there was a reasonable likelihood that, absent error in the procurement process, Dynacs would have been awarded the contract.

■ Here, plaintiff asserts that it has satisfied the first prong of the required showing because the court found in *Dynacs Eng'g*

---

"[a] pleading which sets forth a claim for relief ... shall contain a demand for judgment for the relief to which the pleader is entitled." The rules of this court contemplate notice pleading, *see Cubic Defense Systems, Inc. v. United States*, 45 Fed.Cl. 450, 466 (1999); *Alfa Laval Separation, Inc. v. United States*, 47 Fed.Cl. 305, 312 (2000), and there is no contention by defendant that it lacked notice of plaintiff's claim for such relief. *See* Damages Tr. at 33–43. Although defendant notes in its remedy that such relief is precluded because "Dynacs does not expressly ask for its proposal costs in its prayer for relief," Def.'s Remedy Mot. at 19 n. 5, defendant ad-

dresses the propriety of such an award on the merits. *See id.* at 17–21.

6. Because plaintiff has not pursued the recovery of its attorneys' fees, the court declines to address the issue.

7. FDC notes that "Dynacs has filed neither an application for a temporary restraining order nor a motion for preliminary injunction, and contract performance has continued since March 2000." I.'s Remedy Br. at 6.

8. *See* n. 4 *supra.*

that Dynacs had a substantial chance to receive the MRDOC award absent the agency's error in the procurement process. Pl.'s Relief Br. at 5–6. In the remedy briefing, however, defendant and intervenor challenge the court's finding and, in effect, urge the court to reconsider its liability decision.[9] *See* Def.'s Remedy Mot. at 9–14; I.'s Remedy Br. at 6 (stating "we dispute [that proof of success on the merits] has occurred").

In particular, defendant challenges the court's conclusion that the agency's unequal treatment of Dynacs and the awardee during reopened discussions with the offerors was prejudicial error. *See* Def.'s Remedy Mot. at 9–14. Defendant asserts that "[t]he Administrative Record in this case aptly supports a finding that the error did not substantially impact upon Dynacs' ability to receive the award." *Id.* at 13. Defendant states that "[e]ven though the Court found that the agency applied its policies inconsistently, there was no finding that the agency did so with the express intent of favoring FDC over Dynacs." *Id.* While conceding that "[t]he agency attempted to be fair to both sides, but fell short," defendant contends that in the absence of "a concerted effort to steer MRDOC to FDC," "agency[ ] error" in the procurement process is inadequate to warrant injunctive relief. *Id.* at 13–14.

Although defendant's argument is cast in terms of the remedy, it is clear that defendant is continuing to press its argument that Dynacs' protest should not have been sustained in the first place. Defendant continues that "the procurement error did not lead to the rejection of Dynacs' proposal." *Id.* at 14. Defendant explains that FDC did not receive the contract award based on its technical score (the area that was the subject of discussion with Dynacs after FPR# 1). *Id.* at 6–7. Rather, defendant states, the agency awarded the MRDOC to FDC based on the offeror's more favorable share ratio and price/cost. *Id.* Defendant reasons that because "[t]he three weaknesses which the

Court found the agency erroneously did not allow Dynacs to revise at FPR 2 . . . involve technical ability" rather than share ratio and cost/price, NASA's award decision was not impacted by the error.[10] *Id.* at 7, 9–10.

Defendant states:

> The administrative record clearly demonstrates that while the agency had serious concerns about FDC's proposal, at no time did those concerns equate to a determination that FDC was technically unacceptable as that term is used in the FAR. Further, at no time did the agency identify any deficiency in either offeror's proposal.

Def.'s Remedy Mot. at 11. Defendant adds:

> A weakness does not equate to a finding of technical noncompliance or unacceptability. "Weakness, as used in this subpart, is a flaw in a proposal that increases the risk of unsuccessful contract performance." FAR § 15.301. In contrast, a "[d]eficiency, as used in this subpart, is a material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an *unacceptable level.*" *Id.* (emphasis added).

*Id.* at 10–11. Emphasizing that the Source Selection Authority also stated after FPR# 1 that "FDC's proposal had no deficiencies," defendant asserts that FDC's proposal was technically acceptable within the terms of the RFP and that FDC was qualified to perform the contract. *Id.* at 10, 11. Thus, defendant argues, Dynacs has failed to establish that it had a substantial chance, as contemplated by the Federal Circuit's decision in *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999), of receiving the MRDOC award. *Id.* at 12.

The court disagrees. The conclusion that defendant urges the court to draw regarding FDC's likelihood of receiving the award absent illegal conduct in the procurement process cannot, in fact, be made by the court.

9. Defendant first sought reconsideration of the court's finding of prejudicial error in its Defendant's Request for Reconsideration of the Court's Liability Finding or, Alternatively, Defendant's Suggestion for Further Proceedings. The court denied the request after finding that the request had not been timely made. *See Dynacs Eng'g Co. v. United States,* 48 Fed.Cl. 240, 242 (2000).

10. Based on similar reasoning, FDC asserts, in its briefing, that "[t]he errors identified by the court are not significant." I.'s Remedy Br. at 10.

Defendant asks the court to decide that even if Dynacs had received a request in discussion to address again all of its previously identified weaknesses or even if FDC had not received a second request to address its previously identified weaknesses, the agency would have concluded, nonetheless, that Dynacs' proposal was not worth the cost premium. *See* Def.'s Remedy Mot. at 7, 15. But, as defendant itself pointed out in its briefing, the decision to accept or reject a cost premium (and therefore to decide to award a contract) lies within the discretion of the agency, not the court. *See Stratos Mobile Networks U.S.A., L.L.C. v. United States,* 213 F.3d 1375, 1379–80 (2000) (stating that the decision to award a contract must be upheld unless found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law).

Here, the administrative record contains evidence which supports a finding "that there was a substantial chance [plaintiff] would have received the contract award but for th[e] error." *Alfa Laval,* 175 F.3d at 1367 (quoting *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir.1996)). During the procurement process, the agency documented its determination that:

> At the completion of the evaluation [of the FPR# 1 submissions,] it was found that *significant risk* had been added to [FDC's] technical and business approaches.... These findings were considered a *significant risk* on that Offeror's ability to successfully perform the MRDOC contract.

AR at 5388–89 (emphasis added). This documentation in the administrative record indicates that, after evaluating the FPR # 1 submissions, the agency seriously questioned whether FDC could successfully perform the contract. The resulting uncertainty about FDC's proposal based upon NASA's determination that FDC had added "significant risk" to its technical and business approaches precipitated the reopening of discussions. *See Dynacs Eng'g,* 48 Fed.Cl. at 133–34. The court views the documented evaluation of FDC's proposal and the subsequent conduct of the agency as evidence of defendant's doubt regarding FDC's ability to perform the contract successfully. On the basis of that

evidence within the administrative record, the court concludes that, prior to reopening discussions with Dynacs and FDC, NASA's concern about FDC's proposal was significant.

While defendant asserts that "qualitative assessments are for agency officials ... to make" in support of its position, defendant's own briefing in this case supports the court's conclusion that the agency's decision involved prejudicial error. Def.'s Remedy Mot. at 9–10. As the court wrote in its decision on liability:

> NASA, in fact, assessed the cost risk associated with FDC's proposal after the submission of the FPR# 1 proposals as follows:
>
>> With respect to FDC, procurement officials were concerned that "[s]ome of the areas that were underscoped were present in the Offeror's proposal prior to the FPR, but had not been the subject of discussions with that Offeror." AR 5382. These pre-existing initial proposal weaknesses represented about [ ] in cost risk from underscoping.
>
> Def.'s Mot. at 12. Moreover, the agency observed:
>
>> Only as the cost analysis progressed were more clarifications posed to FDC than to Dynacs, reflecting NASA's increasing curiosity concerning how FDC had been able to propose such a low priced offer. AR 4488, 4490–4491. Finally, when the cost analysis was completed, more new weaknesses were identified regarding FDC (5) than regarding Dynacs (2), indicating NASA's judgment that the work could not be done for the price FDC proposed.
>
> Def.'s Rep. at 8.

The government itself acknowledges that, after FPR# 1, FDC had not put forward a complete and acceptable proposal. The Federal Circuit has instructed that when one offeror's proposal is unacceptable in a two bidder competitive range, the court must find that the unsuccessful offeror had a " 'substantial chance' " to receive the contract award absent the agency's error in awarding the contract. *See Alfa Laval,* 175 F.3d at 1368. The court concludes

that Dynacs has satisfied its burden of proving by a preponderance of the evidence that NASA committed a significant, prejudicial error in the procurement process. *See id.; Statistica*, 102 F.3d at 1581; *Data Gen.Corp.*, 78 F.3d at 1562.

*Dynacs Eng'g*, 48 Fed.Cl. at 136–37.

While acknowledging that "the agency had serious concerns about FDC's proposal," defendant argues that an "unacceptable" proposal under the FAR is limited to a technically non-compliant proposal and, on that ground, defendant distinguishes the facts of *Alfa Laval* from the facts of this case. Def.'s Remedy Mot. at 10–11. Interpreting *Alfa Laval* in that way, defendant urges that a "substantial chance" may be established only in the limited circumstance involving one technically non-compliant offeror in a two-bidder competitive range. *Id.* The court disagrees with defendant's interpretation. The court believes so narrow an interpretation vitiates the element of agency discretion in the case of a two-bidder competitive range and requires a protestor to show substantial *certainty* that it would have received the contract but for the error. The court does not understand that to be the meaning of the Federal Circuit's decision. Rather, the court believes that bidders are entitled to be afforded relief from illegal conduct not only when it was certain that they would have won the procurement absent the error, but also when, as here, there was a " 'substantial chance' " they would have done so. *See Alfa Laval*, 175 F.3d at 1368 (quoting *Statistica*, 102 F.3d at 1582).

From the administrative record in this case, it is clear that at the conclusion of FPR# 1, Dynacs had a technically superior proposal and the agency was seriously concerned about the risk of unsuccessful contract performance by FDC. The record is also clear that the level of the agency's concern about FDC's proposal prompted NASA to reopen discussions with the offerors. What is unknown to the court, of course, is how the agency would have evaluated the offerors' proposals and thereby assessed the best value to the government if each offeror had been given a similar opportunity to address its preexisting proposal weaknesses.

The administrative record before the court does not answer this question. Knowing what award decision the agency made based on the FPR# 2 submissions of the offerors does not entitle the court to speculate on what award decision the agency might have made in the absence of the procurement error. Because the record is undisputed concerning the agency's evaluation of the offerors' proposals at the conclusion of FPR # 1, the court is persuaded that the evidence supports a finding that, in the absence of the error, Dynacs had a substantial chance of receiving the contract award.

2. The other considerations in determining whether an injunctive remedy is appropriate militate against granting such relief.

Dynacs argues that it will suffer irreparable harm if the MRDOC award is not enjoined. Pl.'s Relief Br. at 8–10. More particularly, plaintiff explains, it will suffer the irreparable injury of the denial of a fair evaluation for the contract award and the loss of the opportunity to earn a profit. *Id.* at 8–9. Additionally, plaintiff alleges that it will suffer the irreparable harm of the loss of the opportunity to enhance its reputation in the area of microgravity research and thereby obtain similar work in the future. *Id.* at 9. Plaintiff contends that because such injuries cannot be redressed with monetary damages, an injunction is warranted. *Id.* at 9–10.

Defendant urges the court to consider plaintiff's allegations of irreparable harm with the likelihood of plaintiff's success upon the merits of this protest. Def.'s Remedy Mot. at 9. While conceding that "harm necessarily befalls any disappointed bidder when it does not receive a contract award," NASA argues that procurement error coupled with a potential loss of business does not require injunctive relief if the error did not impact the award decision. *Id.* (quoting *Hawpe*, 46 Fed.Cl. at 582). Here, defendant contends, the evidence supports a finding that the procurement error, specifically, NASA's inconsistency in the scope of its reopened discussions with the offerors, "did not substantially

impact upon Dynacs' ability to receive the award." *Id.* at 13.

FDC addresses the issue of harm, stating: [T]he damage to the ISS [International Space Station] project, the additional cost to the government, and the consumption of additional time and government resources in conducting a new evaluation and/or re-competing the procurement, and the harm to FDC outweighs any alleged harm to Dynacs.

I.'s Remedy Br. at 9. Defendant reiterates FDC's concerns regarding the balance of the harms. Defendant states that the several hundred million dollar contract has a five-year base period during which time the selected contractor must construct a Fluids and Combustion Facility [FCF] for use as a research facility in the ISS [International Space Station]. Def.'s Remedy Mot. at 15–16. Noting that the FCF is scheduled to be launched on a space shuttle flight in September 2004, defendant explains that the timing for the contract milestones would be adversely affected by removing FDC as contractor because FDC's approach to performing the contract differs from Dynacs' approach. *Id.* at 16. Defendant adds that considerable expense would be incurred in changing contractors because "the agency would have to start over from scratch, forfeiting the money already spent." *Id.*

Plaintiff, however, insists that the balance of harms tilts in favor of an injunction. Pl.'s Remedy Br. at 10–11. Plaintiff reasons that the agency will not be injured by an injunction because "NASA itself freely admits that Dynacs proposed the technically superior offer." *Id.* at 11. Additionally, plaintiff asserts that enjoining the current contract award will permit NASA to obtain "a legal [procurement] award" and "the better contractor for the MRDOC project." *Id.* Noting that it was the incumbent contractor prior to the award to FDC and that FDC hired most of Dynacs' microgravity workforce in Cleveland, Dynacs states that it will continue the initiated work without interruption. *Id.*

Dynacs argues that an injunction is necessary to serve the public interest in honest, open and fair federal procurements. *Id.* at 10. Although it acknowledges that "there is a public interest in error free procurement," NASA contends that " '[e]stablishing legal and prejudicial error sufficient to call into question the legality of the procurement does not automatically translate into injunctive relief.' " Def.'s Remedy Mot. at 15 (quoting *Cubic Defense Sys., Inc. v. United States,* 45 Fed.Cl. 450, 473 (1999)). Rather, defendant asserts that the public interest is served by leaving the contract award undisturbed. *Id.* Defendant explains that because the agency has determined that "the more favorable share ratio and price/cost offered by FDC as traded off against Dynacs' admitted technical superiority" was the best value procurement, the public interest is satisfied. *Id.* at 14–15.

The court determines that the five-year base term of the contract coupled with the agency's significant international obligations militate against disrupting the current work performance schedule. *See* Declaration of Jack Salzman ¶¶ 2, 5 (attach. to Def.'s Remedy Mot.). Additionally, because the differences between Dynacs' and FDC's proposed approaches to the work will require a substantial revision of the contract work which has been completed, *see id.* at ¶¶ 3, 4, the cost in time, personnel and monetary resources of stopping the ongoing work is very high. Accordingly, after carefully weighing the balance of harms and considering the public interest, the court decides that injunctive relief is not appropriate in this case.

### B. An award of bid preparation costs is appropriate.

■ Pursuant to the Administrative Dispute Resolution Act of 1996 (ADRA), this court may award bid proposal and preparation costs in a bid protest action. 28 U.S.C. § 1491(b)(2) (Supp.1997). The ADRA specifically provides that "the Court may award any relief that the Court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." *Id.* In *MVM, Inc. v. United States,* 47 Fed.Cl. 361 (2000), this court observed:

An award of bid proposal and preparation costs ... advance[s] the public interest and help[s] to ensure government compliance with procurement regulations. Offer-

ors incur expenditures in preparing a bid proposal. When the government makes a prejudicial error, a disappointed bidder may expend additional funds on a bid protest action. If the disappointed bidder knows that it will be unable to recover any costs, it will have less incentive to bring a bid protest action .... By bringing a bid protest action, the disappointed bidder helps to ensure that the government complies with procurement regulations.

*Id.* at 366. Based on the agency's prejudicial error in this case, the court finds that an award of bid preparation costs is proper.

### III. Conclusion

Further to the foregoing, the court orders the following:

A. The court awards bid preparation costs to plaintiff. Plaintiff shall submit a detailed statement of bid preparation costs to defendant for an audit as promptly as reasonably practicable. Thereafter, as soon as reasonably practicable, the parties shall file a stipulation of bid preparation costs with the Clerk of the Court.

B. Upon the filing of the stipulated bid preparation costs, the Clerk of the Court shall enter judgment for Dynacs Engineering Company, Inc. without further order of the court.

C. The court awards costs to plaintiff in accordance with Rules 54(d) and 77.4 of the Court of Federal Claims. Plaintiff's Bill of Costs received by the Clerk of the Court on February 16, 2001, shall be filed herewith and shall be deemed to have been filed, *nunc pro tunc,* upon entry of judgment.

D. All filings made under protective order in this matter shall remain under protective order for three years and 30 days after the entry of a judgment from which no appeal may be taken or after the expiration of any time for appeal after the entry of judgment, whichever first occurs. Notwithstanding the foregoing, upon motion of a

party made within 10 days after the expiration of such three year period and for sufficient cause shown, the court may order the continuance of the protective order.

IT IS SO ORDERED.